In re PROMOWER, INC., Debtor.

PROMOWER, INC., Morton A. Faller, Trustee, Plaintiffs,

v.

John SCUDERI, Albert C. Scuderi, Margaret A. Scuderi, Marjorie A. Scuderi, Christopher C. Scuderi, Diane L. Scuderi, Jerry A. Scuderi, Marsha A. Scuderi, Defendants.

Bankruptcy No. 84–A–0296.
Adv. No. 84–0132A.

United States Bankruptcy Court,
D. Maryland,
Rockville Division.

Jan. 10, 1986.

Jeffrey Axelson, College Park, Md., for debtor.

Steven Dorne, Rockville, Md., for defendants Scuderi.

Morton Faller, Washington, D.C., Trustee of the Chapter 7 estate.

## MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge.

This amended complaint, filed on behalf of Promower, Inc., and Morton Faller, Chapter 7 trustee, against numerous members of the Scuderi family and their wives, seeks compensation for one of the most egregious violations of the stay of § 362(a) that the court has encountered. The complaint is in three counts, two of which, pertaining to an injunction, are now moot. The third count is entitled "Forcible Detainer." [1] It states:

On or about March 4, 1984, the Debtor was in actual and lawful possession of the premises known as 15921 Rear Frederick Road, Rockville, Maryland 20855. Defendant, his agent, servants and employees, without authorization, justification or excuse, padlocked and sealed all access to said premises, and otherwise forcibly entered into and took possession of said premises. The defendant's ac-

1. For a description of forcible entry and detainer in Maryland, *see Maryland Law Encyclope-* *dia, Actions* § 54.

tions were undertaken intentionally and wantonly, with an evil and rancorous motive, the purpose being to deliberately and willfully so injure the Debtor that the Debtor would be unable to continue operating the business.

## DISCUSSION

Debtor's Chapter 7 petition was filed on March 7, 1984, at 1:45 p.m. Two days before that, John Scuderi, in concert with his father Albert and his brother Christopher, provided for one of the most unique tenant-lockouts on record. What they did to prevent their tenant from using its leased property was to station dilapidated vehicles, a vehicle from which wheels had been removed, and various other items of debris around the premises located at 15921 Rear Frederick Road, Rockville, Maryland, owned by the Scuderis. They also placed newspapers on the inside of the windows, all in violation of the stay of 11 U.S.C. § 362 and Md.Real Prop.Code Ann. § 8–401, *et seq.* (1981 Repl.Vol.). What the landlord thereby sought to do was to take possession of the property without process. This court has previously described the Maryland landlord-tenant law in part in the case of *In re Pagoda International, Inc.*, 26 B.R. 18 (BC Md.1982). What made this cruel action on the part of the Scuderis more difficult to understand was their previously congenial attitude toward the debtor throughout the period of its lease term and prior defaults.

Certain of the defendants' conduct was improper under Maryland law. They could not evict debtor or exercise rights of self-help without filing a written complaint in the District Court of Maryland and obtaining a judgment of possession. No such judgment was obtained. Further, this being the first landlord-tenant action between the parties, even if the Scuderis had obtained a judgment, debtor would have had the absolute right under state law at any time prior to the actual execution of the eviction order to redeem the leased premises. Md.Real Prop.Code Ann. § 8–401(e); *Berlin v. Aluisi*, 57 Md.App. 390, 470 A.2d 388 (Md.Ct.Spec.App.1984). Debtor tendered part of the rent said to be in default—the tender was ignored.

The debtor, particularly through its principals, Harriet Meyers, vice president, and Charles (Buddy) Royster, president, shop supervisor, and main mechanic, ran a lawn mower operation. It started on the subject premises located on Frederick Road between Gude Drive and Shady Grove Road in Rockville. This shopping center owned by the Scuderis had approximately three places of business in the front row facing Frederick Road, a busy artery, and three shops in the back. The stores in front were in typical form with show windows attractive to passersby. The stores in back were primarily shop operations with overhead garage doors for front entry and side doors. When Promower started in business in March, 1981, it was in the rear but thereafter arranged a lease for a place in front. With the store in front, debtor was able to sell new lawn mowers to such a degree that in 1982 it was named the *Snapper* New Dealer of the Year and it was tied with the *Snapper* Established Dealer of the Year.

The business steadily grew since its founding, but cash flow was such that the debtor was not able to maintain possession of the front property and surrendered it to the Scuderis in the Fall of 1983. Debtor entered into a new lease for one year on November 1, 1983. The winter months were always quite difficult for the debtor, with little activity, resulting in shorter work weeks, less attention to the business, and a consequent drying up of cash flow. While debtor had some money coming in for February, 1984, debtor made no payment for that month and it was this default which galvanized the Scuderis into action, to the surprise of the debtor's principals. The landlord filed a complaint in the Landlord-Tenant Division of the District Court of Maryland on February 23, 1984, with trial set for March 7, 1984. Being impatient to do what they did, the Scuderis locked Promower's principals out of the business on March 5, 1984, and padlocked

the premises. They jammed the lock in the door by breaking off the head of a key. The only remaining access was by means of a hole punched in the dividing wall between the Scuderi premises and debtor's property. The Scuderis' concern was that the tenant would remove its property. The trustee found no evidence of any improper removal of estate property. In fact, the Scuderis took an inventory and used debtor's records to solicit dealer material in order to run a competing business. Debtor could not gain access even to use the business checkbook. Personal funds were used to pay bankruptcy counsel a $2,000 filing fee. So that no one was mistaken as to the death of the Promower business, the Scuderis put newspaper on the inside windows and a sign up, "DO NOT ENTER—LANDLORD POSSESSION."

Between the time of filing of the landlord-tenant complaint and the trial thereon, debtor filed its Chapter 7 petition and the automatic stay of § 362(a) fell like an iron door, protecting the debtor so that it could orderly liquidate its business without further harassment. The Scuderis had actual knowledge and notice of the bankruptcy filing. Indeed, the filing was brought to the attention of the District Court at the time of trial on the landlord-tenant complaint, and Christopher Scuderi said he knew of it. The judge of the District Court therefore did not terminate the tenancy.

The transcript of the District Court proceedings shows that John Scuderi was advised by the court, in answer to his question whether he got possession, "You don't get anything against the corporation." (Defendant's Exhibit 2–b) The trial judge pointed out that Mr. Scuderi needed an "o.k." from the bankruptcy court before the eviction could go forward. Scuderi's testimony before this court that he was told he could keep the barricades in place is without foundation.

While the debtor's checkbook and papers were padlocked inside, the debtor, through Harriet Meyers, tendered cash on the morning of trial for possession of the premises, which action would, of course, stop the eviction and leave the parties where they were. But the money was refused and the defendants remained in possession. To compound their misconduct, the Scuderis immediately posted a sign on their building that they were available for lawn mower repair. The logical inference to be drawn is that having destroyed the business of the debtor, the Scuderis were now attempting to divert the debtor's customers.

All of this is somewhat difficult to understand because of the previous relationship of the parties. The Scuderis knew that Promower was a seasonal business. One does not seek to get lawn mowers and chainsaws prepared in January and February. It is not until the first bit of green appears that consumers such as the writer of this opinion look at their lawn mower and carry it in for the annual maintenance.

The defendants state that they acted on the advice of counsel. They claim that their lawyer, Jeffrey Long, told them that they could lock out the debtor, put the barricades up, put the paper on the windows, and keep the debtor locked out even after the filing of the petition. "Reliance on advice of counsel may be considered in mitigation of the sanction, but does not constitute a defense to contempt of court." *SEC v. First Financial Group of Texas, Inc.,* 659 F.2d 660, 670 (5th Cir.1981) (citations omitted). Furthermore, in the present case counsel had been misled. Counsel, Mr. Long, was told that the property had been abandoned and he was addressing the non-existent problem of preservation of the property. He was unfamiliar with Maryland law and thought the tenant was thousands of dollars in arrears. The Scuderis never described the blockade. The court finds that the Scuderis have no right to rely upon this defense. *Cf. Giant for Maryland, Inc. v. State's Attorney of Prince George's County, Maryland,* 274 Md. 158, 334 A.2d 107, 119 (1975).

Not all of the Scuderis were involved in the alleged misconduct. The court finds as a fact that the Scuderi wives were in no way involved in this and no cause of action

has been stated against them. However, it is clear from the evidence presented that John Scuderi played a major role, as did his brother Christopher who refused the money and assisted in the barricading, together with their father.

■ The law in this jurisdiction is well settled that a willful violation of the automatic stay is contemptuous. *See In re Miller,* 22 B.R. 479, 481 (D.Md.1982). This violation of the Code was willful in every respect, and the defendants had knowledge of the stay almost from the minute of its inception. Despite their knowledge of this, they did everything they could to hamper the administration of this case until the trustee obtained an order enjoining them and permitting his entry on the premises. They destroyed any opportunity for the debtor to have an orderly liquidation of its business. Perhaps the unkindest aspect of all was that the defendants terrified customers who attempted to pick up their lawn mowers and, on finding the ridiculous barricade up, went panic stricken to Consumer Affairs of Montgomery County, further fueling the fire started by the Scuderis.

## DAMAGES

We now reach the matter of damages. The court finds the testimony of the customers as showing that the Promower business enjoyed wide customer acceptance among professional landscapers and that the business was well operated on the customer side. The quality of the repair work done by "Buddy" was well regarded, dependable, and reasonable. The debtor responded to the telephone calls of its customers and was on many accounts a very successful business. On the other hand, the court must disregard in its entirety the testimony of Harry A. Bauer, the CPA who was offered to give an evaluation of the business based upon reading the tea leaves of the financial statements and projecting them into the future. What Mr. Bauer did not consider was that the visibility of a glass-front store had been lost, together with a large amount of the retail business and any spinoff business that would come

from the repair business. In addition, and far more important, is the fact that this company was in Chapter 7. Had debtor's principals elected Chapter 11, the situation might be different. But Chapter 7 is not for rehabilitation, it is for liquidation and no other purpose. It is true that the court may under 11 U.S.C. § 704(8) authorize the trustee to operate the business for a period for the limited purpose of winding down the affairs of the debtor, but maintaining an ongoing business is inconsistent with Chapter 7 principles of reducing estate property to money. The court finds that the principals of the debtor, Mr. Royster and Mrs. Meyers, intended to start a new career with Norman & Staiger Lawnmower Sales & Service and to close down Promower, Inc. In fact, the business had been closed down for substantial periods of time, and they had just started new, full-time employment on March 5, 1984. One does not start full-time employment elsewhere the month before the busiest season of a business without some plan other than continuing that business. Debtor consulted counsel the day after the lockout and the day before the Chapter 7 filing. Counsel could have obtained an *ex parte* injunction in state court under former Maryland Rule BB72a (1977 Repl.Vol.) considering defendants' misconduct. However, the election was to close down rather than continue. The court doubts that one day in the barricade was sufficient to destroy a business had the parties desired to continue it. The court finds that it was the decision of the Promower principals in filing the Chapter 7 case, and not the deplorable conduct of defendants, that ended the business of Promower.

In reviewing the items of damage, the court will note that because of its recapture of the premises, the landlord is not entitled to the administrative rent sought other than the sum of $860 for May and June, 1984. Furthermore, the debtor is entitled to compensation for the legal charges and expenses attendant to the injunction case. *In re Miller, supra* at 482;

623

See also, Matter of Behm, 44 B.R. 811, 813 (BC W.D.Wis.1984), and cases cited therein.

 Ex aequo et bono, the plaintiff would appear to be entitled to some expenses and damages arising out of this outrageous violation of the automatic stay of § 362(a). If ever there was a case that called out for the punitive damages provided for in 11 U.S.C. § 362(h), enacted as a part of the 1984 Amendments to Title 11 of the United States Code, it is the instant proceeding. Public Law 98–353, in adding § 362(h) to the Bankruptcy Code in Title III, Subtitle A, Sec. 304, set the effective date under § 553(a) as 90 days after its July 10, 1984, enactment. The law was enacted after the misconduct which is the subject of this complaint. Therefore, the case of In re Tel-A-Communications Consultants, Inc., 50 B.R. 250 (BC Conn.1985), relied upon by plaintiff-trustee, has no application to the present case which was filed before the effective date of the statute. The court finds no authority prior to the enactment of § 362(h) for the award of punitive damages for violation of the bankruptcy stay. See generally, Matter of Behm, 44 B.R. 811 (BC W.D.Wis.1984); In re Zartun, 30 B.R. 543, 545–46 (B.A.P. 9th Cir.1983) ("we believe that damages and attorneys fees may be awarded ancillary to a contempt order so long as the awards are not punitive and they restore the status that existed before the stay violation").

Plaintiff has made out a cause of action but has failed to prove any damage. While the court may take judicial notice of the fact that debtor's counsel was paid $2,000 to file this case, there has been no attribution of any of that fee to the instant claim. The court is left to its own devices to fix a fee for services rendered based upon its own observation and experience. In re Erewhon, Inc., 21 B.R. 79, 81 (BC Mass. 1982). Having discarded plaintiff's theory of valuation based on an appraisal of Promower, Inc., as an ongoing concern, there is no admissible evidence of damage before the court. This is not a case of difficulty of proof as in Kinty v. United Mine Workers of America, 544 F.2d 706, 725 (4th

Cir.1976), cert. denied 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977), but rather a case where there is an absence of any reasonable proof of damage. The court is left to speculation and conjecture.

Judgment will be entered in favor of plaintiff-trustee in the sum of $1,000, representing reasonable compensation for the efforts involved in filing and obtaining the preliminary injunction issued March 27, 1984.