COMMONWEALTH OF PENNSYLVA-
NIA DEPARTMENT OF
PUBLIC WELFARE

v.

Lorraine JOHNSON–ALLEN.

and

COMMONWEALTH OF PENNSYLVA-
NIA DEPARTMENT OF
PUBLIC WELFARE

v.

Ruby STEFFLER, a/k/a
Ingrid J. Steffler.

Civ. A. No. 87–1032.

United States District Court,
E.D. Pennsylvania.

July 14, 1988.

As Amended Aug. 1, 1988.

Andrew A. Coates, Office of Legal Counsel, Philadelphia, Pa., for the Com. of Pa. Dept. of Public Welfare.

Gary Klein, Philadelphia, Pa., for Lorraine Johnson–Allen.

David Searles, Philadelphia, Pa., for Steffler.

James O'Connell, Philadelphia, Pa., Chapter 13 standing trustee.

Mary B. Seiverling, Ofc. of Fraud, Abuse, Investigation & Recovery, Harrisburg, Pa., for appellant.

James Fitzpatrick, District Attorney's Office, Government Fraud Unit, Philadelphia, Pa.

## MEMORANDUM AND ORDER

GAWTHROP, District Judge.

Pending before this court is an appeal from the Department of Public Welfare (DPW) from a bankruptcy court decision, involving two similar cases, which held that criminal restitution payments may be discharged in a Chapter 13[1] case. Upon consideration of the statute, and its interpretation by the Supreme Court in *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), in which the Court construed it against the background of certain long-standing policies, I will reverse.

### BACKGROUND

On January 17, 1984, and June 18, 1985, respectively, appellees, Ruby Steffler and Lorraine Johnson–Allen pled guilty to welfare fraud. Appellees were placed on probation and were ordered to make restitution payments to the DPW[2] pursuant to section 62 Pa.Stat.Ann. § 481 (Supp.1988).

---

1. 11 U.S.C. §§ 1301–1330. This Chapter permits debtors to retain their assets, while applying a portion of future earnings towards their debts. *See generally: In re Smith*, 848 F.2d 813 (7th Cir.1988); 3 W. Norton, Bankruptcy Law and Practice §§ 66.08–66.09 (1981).

2. Before this case was reassigned to me, Judge Ditter issued an order requiring DPW to show cause why it had standing to challenge the dischargeability of the restitution payments, the record not being complete in this regard. In the accompanying memorandum, Judge Ditter

After they had begun making restitution payments, appellees filed voluntary petitions for relief under Chapter 13. On May 19, 1986, DPW filed separate complaints in the bankruptcy court against the appellees to determine the dischargeability of their debt. These complaints alleged, essentially, that the restitution payments were not "debts" within the meaning of the Bankruptcy Code (Code), and, hence, non-dischargeable. Appellees filed answers and counterclaims against the agency, contesting the legal bases for DPW's assertions, and averring that the agency was in contempt of court for violating the automatic stay provisions of the Code. 11 U.S.C. § 362. Cross-motions for summary judgment were then filed by the parties. The Honorable David A Scholl, United States Bankruptcy Judge, granted appellees' motions for summary judgment, but declined, however, to grant sanctions against DPW pursuant to 11 U.S.C. § 362(h). *In re Johnson–Allen*, 69 B.R. 461 (Bkrtcy.E.D. Pa.1987).

DISCUSSION

The Code defines a "debt" as a "liability on a claim." 11 U.S.C. § 101(11). The term "claim" is defined by 11 U.S.C. § 101(4), which reads as follows:

(4) "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

In interpreting these provisions and assessing the policies underlying them, I begin by considering the effect of the Supreme Court's decision in *Kelly v. Robinson, supra*. There, one Carolyn Robinson had been convicted of larceny for wrongfully receiving public assistance benefits. A Connecticut state court sentenced her to a term of probation, conditioned on her making restitution payments to the State of Connecticut Office of Adult Probation (COAP). Three months later, Robinson filed a petition under Chapter 7 of the Code, 11 U.S.C. §§ 701–766, in which she listed COAP as a having a claim against her. COAP filed neither a complaint to determine dischargeability, nor an objection to discharge, and, consequently, on May 14, 1981, the Bankruptcy Court granted Robinson's petition. In February of 1984, COAP informed Robinson that it intended to enforce the restitution order. Robinson responded by instituting adversarial proceedings in the bankruptcy court. Following a trial, the bankruptcy judge concluded that Robinson's obligation to pay restitution was unaffected by its order of May 14, 1981.

The Second Circuit reversed, holding that the restitution obligation constituted a "debt," dischargeable under the Code, and pointing to legislative history of the Code which they read to suggest that "in enacting § 101(4), Congress sought the 'broadest possible definition' of a claim, ....intending that virtually all obligations to pay money be amenable to treatment in bankruptcy proceedings ..." *In re Robinson*, 776 F.2d 30, 35 (1985) (citation omitted), *rev'd, sub nom., Kelly v. Robinson, supra*. The Court of Appeals reasoned that "by giving 'claim' the broadest possible definition and defining 'debt' in terms of a 'claim,' Congress also sought to give the term 'debt' its broadest possible scope." 776 F.2d at 36. It is this analysis that Judge Scholl approved in his very thorough opinion which is before me for review.[3]

noted that "in the cases cited by the parties, the challenge to the discharge of the restitution payments was brought by the state agency that received the payments directly from the offender." *Commonwealth of Pennsylvania v. Johnson–Allen*, 81 B.R. 295, 296 (E.D.Pa.1987). Since appellees made their restitution payments directly to DPW, it is now clear that DPW has standing in this matter.

**3.** In support of this viewpoint, Judge Scholl cites *Ohio v. Kovacs*, 469 U.S. 274, 278–80, 105 S.Ct. 705, 707–08, 83 L.Ed.2d 649 (1985). That case, however, is factually and legally distin-

It is this analysis, however, that the Supreme Court disapproved. Speaking through Justice Powell, the Court expressed "serious doubts whether Congress intended to make criminal penalties 'debts' within the meaning of § 101(4)." 479 U.S. at 50, 107 S.Ct. at 361, 93 L.Ed.2d at 229 (footnote omitted). The Court observed that Congress had enacted the Code in light of established judicial precedent, holding that bankruptcy provisions "have reference alone to civil liabilities, as demands between debtor and creditors, as such, and not to punishment inflicted pro bono publico for crimes committed." 479 U.S. at 45, 107 S.Ct. at 359, 93 L.Ed.2d at 226, *quoting In re Moore,* 111 F. 145, 150 (WD Ky.1901). The Court found nothing in the language of the Code, nor in its legislative history, which showed that Congress intended to abrogate this judicial exception with respect to criminal judgments. 479 U.S. at 45, 50, n. 12, 107 S.Ct. at 359, 361, n. 12, 93 L.Ed.2d at 229. In so stating, the Court underscored its

> deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings. The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States. This Court has emphasized repeatedly "the fundamental policy against federal interference with state criminal prosecutions." *Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971).

479 U.S. at 44–51, 107 S.Ct. at 358–60, 93 L.Ed.2d at 227.[4] The Court further noted that, "apart from the burden on state officials of following and participating in bankruptcy proceedings, it is unseemly to require state prosecutors to submit the judgments of their criminal courts to federal bankruptcy courts." 479 U.S. at 48, n. 8, 107 S.Ct. at 360, n. 8, 93 L.Ed.2d at 227–28, n. 8.

The Court refrained from deciding whether restitution payments constituted "debts" under the Code, holding, instead, that the restitution order was nondischargeable under Chapter 7, because it fell within the exception to discharge found in 11 U.S.C. § 523(a)(7). 479 U.S. at 50–53, 107 S.Ct. at 361–63, 93 L.Ed.2d at 229–31. This section provides, in pertinent part:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> \* \* \* \* \* \*
>
> (7) to the extent such debt is for fine, penalty, or forfeiture payable to and for the benefit of a governmental unit and is not compensation for actual pecuniary loss, other than a tax penalty;
> (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
> (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition....[5]

guishable from the case at bar. In *Kovacs,* the Supreme Court was faced with the issue of whether obligations under a civil court order, i.e. an injunction to clean up a hazardous waste site, fell within the Code's definition of a "debt." By contrast, the sole issue here is whether criminal restitution payments fall within the Code's purview.

**4.** This sensitivity to the separate sovereign status of the Nation and its sundry States is well recognized in this circuit. In *Matter of Davis,* 691 F.2d 176, 179 (3d Cir.1982), Judge Adams pertinently stated:

> [A] federal court must consider "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire Country is made up of a Union of separate state governments, and a continuance of the belief that the National Govern-

ment will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger v. Harris,* 401 U.S. ... [37,] 44 [91 S.Ct. at 750] [ (1971) ]. A federal court should be especially cautious in enjoining state criminal proceedings, because of the state's paramount interest in protecting its citizens through its police powers.

**5.** Judge Scholl viewed this ultimate subsection as providing support for an absence of Congressional intent to exclude all criminal penalties, stating: "It is difficult to understand what purpose Congress would have served by exempting criminal penalties less than three (3) years old from discharge if it meant to exempt all such penalties from discharge." *In re Johnson–Allen,* 69 B.R. at 467. I must disagree with Judge Scholl's construction of this subsection, since it

The foregoing exception to discharge does not apply to proceedings under Chapter 13. The applicable discharge provision for this chapter is 11 U.S.C. § 1328, which pertinently states:

> (a) As soon as practicable after completion by the debtor of all payments under the Plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
>> (1) provided for under section 1322(b)(5) of this title; or
>> (2) of the kind specified in section 523(a)(5) of this title.

Although, as the dissent noted in *Kelly v. Robinson*, [6] the holding of the Supreme Court left open the question of whether criminal restitution payments are debts dischargeable in Chapter 13 proceedings, its rationale is no less compelling merely because it chose to address the matter in the context of Chapter 7.

The Supreme Court's reasoning is particularly persuasive in light of the pronouncement by the Pennsylvania Superior Court, affirmed *sub silentio* by the Pennsylvania Supreme Court, that "[a]n order of restitution does not establish a debtor-creditor relationship between the victim and the criminal." *Com. v. Mourar*, 349 Pa.Super. 583, 504 A.2d 197, 208 (1986), *vacated on other grounds*, 517 Pa. 83, 534 A.2d 1050 (1987). *See also In re Kohr*, 82 B.R. 706, 711 (Bkrtcy.M.D.Pa.1988) (probationary

restitution not debt). If no debtor-creditor relationship exists, it is axiomatic that restitution payments cannot be discharged in bankruptcy.

In so stating, I well recognize that the statutory scheme for Chapter 13 bankruptcies is substantially different from Chapter 7; and I am mindful of the argument vigorously propounded by counsel for the bankrupts—and embraced by Judge Scholl—that the different schematic context compels a different result. And I must say that I find a certain inherent logic in the statutory syllogism to be found in the analyses of the Code's words by the Second Circuit and by Judge Scholl.[7]

But in construing the statute, it is to the Supreme Court to which I must ultimately turn, and by which I am ultimately bound. "The law is, by definition precisely what the majority [of the Supreme Court] thinks, taking all things into account, it *ought* to be." *Morrison v. Olson*, —— .U.S. ——, ——, 108 S.Ct. 2597, 2641, 101 L.Ed.2d 569 (1988) (Scalia, J. dissenting) (emphasis in original).[8] The Supreme Court has forcefully declared its disapproval of the notion that the Code's definition of "debts" encompasses punishment inflicted *pro bono publico* for crimes committed—i.e. restitution. Any differences between Chapters 7 and 13 are outweighed by the clear, strong pronouncements of policy by the Highest Court of our land. I can only conclude that the statute says what they say it says.

An order follows.

---

applies only in regard to tax penalties. *In re Kohr*, 82 B.R. 706, 710 (Bkrtcy.M.D.Pa.1988); 1 W. Norton, Bankruptcy Law and Practice § 27.33 (1981).

**6.** 479 U.S. at 36, n. 6, 107 S.Ct. at 366, n. 6, 93 L.Ed.2d at 234, n. 6 (Marshall, J. dissenting).

**7.** I am also aware of Judge Scholl's concern that "if the debtor is already paying all of his disposable income into a plan, it is theoretically and practically impossible that he will have anything left over to pay towards restitution." *In re Johnson–Allen*, 69 B.R. at 469. As Judge Mahoney points out, however, this assumes that money for criminal restitution payments would constitute disposable income. I agree with his observation that criminal restitution payments would, instead, "constitute a necessary expense

that would be first subtracted in determining the debtor's disposable income available to pay debts under the plan." *In re Cancel*, 82 B.R. 674, 677 (Bkrtcy.N.D.N.Y.1988) reversed on other grounds, 85 B.R. 677 (N.D.N.Y.1988).

**8.** Although the Supreme Court's declaration, doubting whether the Code's definition of "debt" encompasses restitution payments, is, admittedly, *obiter dictum*, there are many significant cases in the history of the Court's jurisprudential history in which language of the Supreme Court, although unequivocally *dictum*, has become settled and accepted doctrine. *See, e.g., Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803).

## ORDER

AND NOW, this 14th day of July, 1988, the order of the Bankruptcy Court in the above-captioned cases is REVERSED.