**In re Russell D. HAAN, Donna J. Haan, Debtors.**

**Bankruptcy No. A–B–88–20437.**

United States Bankruptcy Court, W.D. North Carolina.

Dec. 1, 1988.

Judith D. Fraser, Waynesville, N.C., for debtors.

G. Crawford Rippy, III, Asheville, N.C., for Ford Motor Credit Co.

## ORDER DENYING MOTION FOR § 362(h) SANCTIONS

GEORGE R. HODGES, Bankruptcy Judge.

This matter is before the court on the debtors' motion for sanctions against Ford Motor Credit Company and Gilbert J. Scarlett, III, for violating the automatic stay by repossessing the debtors' truck. The court has concluded that no injury and no willful violation of § 362 occurred here. Consequently, the debtors' motion must be denied.

### FACTS

1. The debtors filed their Chapter 7 petition on September 16, 1988, in the Western District of North Carolina. They listed Ford Motor Credit Company ("FMCC") as a creditor which was secured by a Ford pickup truck.

2. Notice of the bankruptcy was mailed to FMCC at its Anchorage, Alaska, office which is where the truck had been financed. The debtors had only recently moved to North Carolina from Alaska and all of their contact had been with FMCC's Anchorage office—although there had been little recent contact by the debtors with FMCC since they had failed to make their monthly payments for the preceding four months. Consequently, at the time of the actions complained of here, the debtors were in default on their obligations to FMCC.

3. Although the notice was mailed to FMCC's address in Anchorage, it appears to have ended up at a "lock box" address in Seattle and was forwarded on from there to Anchorage by a department store who used the same "lock box." (The "lock box" here is actually a bank which collects payments for FMCC and others). The notice arrived at FMCC's Anchorage office—via Seattle—in an envelope bearing the return address of Bon Marché Company. The court finds FMCC's evidence on this point credible, albeit second-hand and thoroughly confused. In short, through no fault or design of its own, it appears that FMCC did not receive actual notice of the debtors' bankruptcy until October 25, 1988. Unfortunately, prior to that, the following events had transpired.

4. As a result of the debtors' default in payments FMCC began efforts to repossess the debtors' truck. It learned of the debtors' move to western North Carolina and referred the matter to its Hendersonville, North Carolina, office. That office hired American Lenders, an independent contractor unrelated to FMCC, to repossess the truck. Gilbert Scarlett is employed by American Lenders. Neither Scarlett nor American Lenders had any knowledge of the debtors' bankruptcy. Between 2:00 a.m. and 3:00 a.m., on the morning of October 10, 1988, Scarlett located the debtors' truck, entered it, started it and drove it away from the debtors' home. The male debtor (hereafter "Haan")—a part-time bondsman—realized someone was taking his truck and gave chase in another vehicle. The chase ensued along "old" U.S. 64 which is a rural, mountain road. Scarlett's counsel asserted that Haan was armed with a .44 Magnum pistol. Haan denied this, claiming it was only a .357 Magnum. Counsel asserted that Haan fired the gun at Scarlett, but Haan denied that, claiming that he only fired the pistol in the air. Haan ultimately caught Scarlett and stopped him. Counsel asserted that Haan then pointed the .357 Magnum pistol at Scarlett's head, but Haan denied that, claiming that he only held the gun up next to Scarlett's head. (All of that is now the subject of criminal proceedings in another court, and this court expresses no findings or conclusions on those matters whatsoever). Fortunately, a Sheriff's deputy arrived before matters progressed further. The truck was taken to the Sheriff's department where it remained for approximately three days before it was returned to the debtor.

5. All along, the debtors' Chapter 7 petition contained a declaration that they intended to surrender the truck to FMCC.

6. There was no claim made by the debtors of any injury to the debtors by the respondents' conduct, and there was no evidence offered of any injury to the debt-

ors—other than a claim for attorney's fees for bringing the motion for sanctions.

## DISCUSSION

7. Liability for sanctions pursuant to § 362(h) requires a "willful" violation of the automatic stay. Generally, to constitute a willful violation of the stay in circumstances such as these requires knowledge of the existence of a bankruptcy. This court has found willful violations in circumstances where the offending creditor did not have actual notice of the bankruptcy. One such circumstance was where the creditor had created a collection system so distant and complex that it was virtually certain to result in stay violations. *In re Melvin Withrow,* 93 B.R. 436, (W.D.N.C., 1988). Another such circumstance was where the facts amounted to a "reckless disregard" of the automatic stay. *In re Shealy,* 90 B.R. 176 (Bkr.W.D.N.C.1988). Neither of those circumstances applies here, nor do any other facts that would merit imputing constructive notice of the bankruptcy to FMCC. Here, FMCC did not receive notice of the debtors' bankruptcy prior to its actions through a remarkable mistake in the mail. It is impossible to determine who is at fault in that error, but it does not appear to be a systemic problem created by FMCC. Rather, it appears to be an isolated accident for which it is impossible to assign responsibility. So, the court concludes that FMCC, through no fault assignable to it, did not receive notice of the debtors' bankruptcy prior to its actions to repossess their truck. Consequently, FMCC has not willfully violated the automatic stay of § 362.

8. Following the foregoing reasoning, it appears clear that Scarlett had no knowledge of the debtors' bankruptcy when he took their truck. So, he has not committed a willful violation of § 362.

9. Finally, it is important to note that this case involves an isolated, inadvertent stay violation in which there was *no injury to the debtors.* Section 362(h) provides that: "An *individual injured* by any willful violation of the stay ... shall recover actual damages ... including attorneys fees...." 11 U.S.C. § 362(h). (Emphasis added). Here, taking the statute literally, there is no "individual injured" since there is no evidence that the debtors were injured by the respondents' actions. That may be a too strict and literal reading of the statute where the facts demonstrate an abusive creditor attempting to hide behind the fortunate (for them) circumstance of a debtor's thick skin. But, the "individual injured" standard should operate in a case like this one to discourage filing of the sanctions motion in the first place—and require its denial if filed.

10. There are a number of competing considerations in § 362 sanctions litigation: First, it appears that some creditors are abusive in their collection efforts by ignoring or paying little attention to bankruptcy stays as a matter of course. Second, most creditors appear to be scrupulous in their efforts to avoid violation of bankruptcy stays. Occasionally, these creditors may violate a stay inadvertently. Third, many debtors are not injured at all by collection efforts that violate a bankruptcy stay. Some debtors are bothered, scared or worse by such efforts. Some debtors ignore it. And, to some the only reaction is realization of the chance for a sanctions motions.

Imposed on all of this is the statutory provision for attorney's fees in stay litigation which may provide an inducement for filing a motion when the attorney's fees of the motion are the only realistic damages in the case. That provision provides real bait for spurring sanctions litigation. The court has a responsibility to restrict that when appropriate. This is such a case. Here there is "no harm—no foul" and no injury—no attorney's fees.

11. The court does not presume to prejudge or discourage any future sanctions litigation. There are circumstances when that is necessary and helpful to the court in the administration of the Bankruptcy Code. There are times when it is not necessary or helpful. Hopefully, the thoughts expressed above will help counsel distinguish between the two circumstances.