**In re Renee McLAUGHLIN Debtor.**

**Renee McLAUGHLIN Plaintiff,**

**v.**

**FIREMAN'S TRUST MORTGAGE CORP. and Firstrust Savings Bank, Defendants.**

**Bankruptcy No. 88–13214S. Adv. No. 88–2262S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 22, 1989.

Susan L. Dejarnatt, Community Legal Services, Inc., Philadelphia, Pa., for debtor.

Steven E. Ostrow, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for defendant.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

At present, the instant proceeding fits the classic mode of litigation which exists only due to the persistence of a satellite fee issue which has maintained its orbit even after the merits of the case have been put to rest. The only issue remaining and that has been remaining in the matter for some time is whether counsel for the plaintiff-debtor is entitled to attorney's fees pursuant to 11 U.S.C. § 362(h) and, if so, in what amount. The specific questions raised are as follows: (1) May a party whose violation of the stay is subjectively innocent and relatively justifiable be held liable for attorneys' fees to the debtor's counsel? and (2) May counsel for a debtor who has foregone any claim to damages for the stay violation be classified as "[a]n individual injured" by a stay violation entitled to recover such fees?

We hold that both of these questions must be answered in the affirmative, but that both raise issues which are relevant to consider in fixing the amount of an award pursuant to § 362(h). We therefore award counsel for the debtor here about half of what is sought, *i.e.*, $1000.00.

The underlying Chapter 13 bankruptcy case was filed by RENEE McLAUGHLIN, the Debtor, on September 15, 1988. Virtually nothing has transpired in the main case except the filing of this adversary proceeding by the Debtor on November 29, 1988. Pursuant to a motion for a temporary restraining order (TRO) seeking to enjoin a December 5, 1988, sheriff's sale of the Debtor's residence at 1845 Nolan Street, Philadelphia, PA 19138 (hereinafter "the Home"), filed with the complaint, we conducted a hearing on December 1, 1988. We considered the hearing to be, in effect, on a motion for a preliminary injunction, because we required notice and conducted an evidentiary hearing before acting on the motion. *See* Bankruptcy Rule 7065; *compare* Federal Rule of Civil Procedure (F.R. Civ.P.) 65(a)(1) *with* F.R.Civ.P. 65(b). At its close, we indicated an intention to grant relief to the Debtor, memorializing same in a brief Order and Memorandum of that day. Given the rather extensive testimony adduced at the hearing and the consideration of avoiding three hearings in the event that the December 1, 1988, proceeding would be contended to be TRO hearing, we scheduled the final hearing on December 8, 1988. This hearing was continued by agreement, with the provisional injunction to remain in effect, until January 10, 1989.

On January 10, 1989, we were advised that the parties had agreed that the injunction could be entered as permanent, and that this was the only relief to be accorded to the Debtor in the proceeding. Thus, the merits were totally resolved. The only is-

sue remaining was whether the Debtor's counsel was entitled to attorney's fees. To this end, the parties agreed to submit the matter on (1) a Stipulation of Facts; (2) a motion for fees by the Debtor's counsel in procedural conformity with *In re Meade Land & Development Co.,* 527 F.2d 280 (3d Cir.1975); and (3) Briefs.

The Stipulation of Facts is too lengthy to recite *verbatim;* thus we shall summarize it. On September 26, 1972, the Debtor's parents, William and the late Willie Mae Hunt, executed a mortgage in favor of the Defendants' assignor in connection with the purchase of the Home. It is not mentioned in the Stipulation, but the Debtor credibly testified at the hearing on December 1, 1988, that she was in fact the equitable "owner" of the Home at all time since September 26, 1972. She had resided there, with her children, exclusively, and she had made all of the payments at all times since the purchase. The deed was placed in her parents' name because of a belief that, otherwise, the Debtor's estranged husband might acquire an interest in the premises. The Debtor ultimately fell into arrears on the mortgage, and Defendant Firstrust Savings Bank, the present mortgagor (referred to hereinafter as "the Defendant"), filed a foreclosure action against the Hunts, obtained a default judgment against the Debtor's father, and ultimately scheduled a sheriff's foreclosure sale on November 7, 1988. The sale was stayed voluntarily by the Defendant, due to a notice problem, until December 5, 1988.

In the mean time, the Debtor's counsel filed the instant bankruptcy case and advised the Defendant's counsel that, under the circumstances, she believed that this filing stayed the sheriff's sale. Throughout October, 1988, as the sale date drew nearer, the parties corresponded, but did not agree, on whether the Debtor's bankruptcy filing impacted on the sheriff's sale.

On November 1, 1988, Mr. Hunt deeded the property to the Debtor, and same was duly recorded. On November 7, 1988, the Debtor's counsel cited the Defendant's counsel to our decisions *In re Sudler,* 71 B.R. 780 (Bankr.E.D.Pa.1987); and *In re*

*Clark,* 69 B.R. 885, *modified,* 71 B.R. 747 (Bankr.E.D.Pa.1987), which she claimed supported the Debtor's position that the sale of the Home was stayed by her filing. It is doubtful whether these decisions do in fact support the Debtor's position. More on point are our dictum in *In re Capodanno,* 83 B.R. 285, 288–89 (Bankr.E.D.Pa. 1988), and a decision of our honored predecessor, former Chief Judge Emil J. Goldhaber, in *In re Black,* 58 B.R. 60, 61–62 (Bankr.E.D.Pa.1986). The Defendant now contends that it changed its adversarial stance after reading *Black,* and that it would have accepted the debtor's position at an earlier point if the Debtor had cited *Black* to it instead of *Sudler* and *Clark.*

This controversy involves strictly an interpretation of 11 U.S.C. § 362(h), which provides as follows:

(h) An individual injured by any willful violation of a stay provided by this section [§ 362(a) ] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

The issues vigorously briefed by the parties are whether the Defendant's initial position that the stay arising from the Debtor's case did not apply to the foreclosure of the Home had merit and, if it did, whether the Defendant's "good faith" in taking this position is relevant to the issue of the Debtor's ability to request attorneys' fees from the Defendant pursuant to § 362(h).

█ Skewing the Defendant's view of the issue is its persistence in the erroneous contention that the recorded deed of the premises from Mr. Hunt to the Debtor did not render the premises "property of the Debtor's estate." Since the underlying bankruptcy is a Chapter 13 case, by effect of 11 U.S.C. § 1306(a)(1), plainly it did, because, pursuant to this Code section, property acquired by a debtor "after the commencement of the case but before the case is closed" *is* property of a Chapter 13 debtor's estate. However, we must concede that the Defendant's global position in this dispute was not totally implausible, given the lack of consideration for and belated timing of the transfer effected by

the November 1, 1988, deed. *See e.g., In re Kelly,* 67 B.R. 508 (Bankr.S.D.Miss. 1986); and *In re Nelson,* 66 B.R. 231 (Bankr.D.N.J.1986), *aff'd,* C.A. No. 86–3724 (D.N.J. May 4, 1987), *aff'd,* 838 F.2d 1207 (3d Cir.1988). *But see In re Everhart,* 87 B.R. 35 (Bankr.N.D.Ohio 1988). It is somewhat disturbing to conclude that a party may file a Chapter 13 bankruptcy and thereby effect a stay on behalf of any nondebtor who decides to convey a property to the debtor. Without the benefit of the rather compelling underlying facts here, we too, might look askance at this last-minute all-too-convenient conveyance.

■ The most notable authority in favor of the Defendant's general position that its subjective and possibly objective innocence of spirit in contending that the stay did not halt the sale of the Home is relevant to the inquiry of whether it should be liable for the Debtor's attorneys' fees is *United States v. Norton,* 717 F.2d 767, 774–75 (3d Cir.1983). There, the Court of Appeals of this Circuit states that, since the violation of the stay ultimately found in that case was "a much litigated and controversial question," *id.* at 774, the violator—IRS did not have such a "fair warning" that its action was violative of the stay, *id.* at 775, as should saddle it with "contempt and ... a fine," *id.* at 774, including an award of attorneys' fees to the debtor's counsel.

The *Norton* language is, however, not conclusive of the issue before us. The decision in *Norton* preceded enactment of § 362(h) in 1984. The only rationale for awarding any remedies to debtors wronged by stay violations, prior to enactment of § 362(h), was the contention that the violative act constituted contempt of court. The policy that "[a] party should not be held in contempt unless a court first gives fair warning that certain acts are forbidden; any ambiguities in the law should be resolved in favor of the party charged with contempt," *id.* at 774, is central to the result in *Norton.* Other courts utilizing the same reasoning as *Norton,* similarly concluded that the "good faith" of the creditor was a defense to a claim of contempt arising from a violation of the stay. *See,*

*e.g., Ford v. Kammerer,* 450 F.2d 279, 280 (3d Cir.1971); *In re Promower, Inc.,* 56 B.R. 619, 623 (Bankr.D.Md.1986), *aff'd,* 74 B.R. 49 (D.Md.1987); *In re Comtek Electronics,* 28 B.R. 829, 832 (Bankr.S.D.N.Y. 1983); and *In re Wilson,* 19 B.R. 45, 46–48 (Bankr.E.D.Pa.1982). This reasoning is, however, not applicable to an analysis under the newly-adopted § 362(h).

We do not wish to suggest that the enactment of § 362(h) completely changed the receptivity of all bankruptcy courts to "good faith" defenses to claims of debtors for attorneys' fees from creditors which they incurred in vindicating the automatic stay. Some courts were willing to enter such awards even prior to the enactment of § 362(h). Thus, in *In re AM International, Inc.,* 53 B.R. 744 (Bankr.M.D.Tenn. 1985), the court awarded the debtor's counsel fees of $53,427.78 for prosecuting a stay-violation claim. Although citing *Norton* as an example of courts which support the position that "attorneys' fees should not be awarded for violations of the automatic stay which involve unusual or controversial questions of law," *id.* at 746, the court adopts the contrary view that "creditors should file first with the bankruptcy court to determine the applicability of the automatic stay, and those who act without court authorization do so at their peril." *Id.* at 746–47. *See also, e.g., In re Demp,* 23 B.R. 239, 240 (Bankr.E.D.Pa.1982) (creditor's counsel who violated stay ordered to pay $50 to clerk and $200 to debtor's counsel).

On the other hand, some courts have reasoned that, despite the presence of § 362(h), attorneys' fees for the debtor's counsel will not be imposed upon a creditor who violates the automatic stay by means of conduct which is merely erroneous rather than maliciously willful. *See In re Bain,* 64 B.R. 581, 584 (W.D.Va.1986) (award of attorneys' fees reversed because bankruptcy court had not determined that the debtor was injured or that the creditor, although "plainly wrong," had acted willfully); *In re Zunich,* 88 B.R. 721, 725–26 (W.D.Pa.1988) (although violation of stay found, attorneys' fees denied from violating creditor because "[c]reditor's counsel

proceeded under the belief that his actions were excepted from the automatic stay"); and *In re Ross*, 83 B.R. 673–75 (Bankr.E.D.Mo.1988) (fact that state agency violated automatic stay "do[es] not support an award of either punitive damages or attorney fees").

Numerous cases hold to the contrary, and have awarded fees despite the creditor's apparent "good faith" in violating the stay. However, we note that, with the exception of the court in *AM International*, the courts do not appear to be liberal in the measure of such fees. *See In re De-Lay*, 48 B.R. 282, 287 (W.D.Mo.1984) ($1000 fee reduced to $250); *In re Houchens*, 85 B.R. 152, 154–55 (Bankr.N.D.Fla.1988) ($50 fee awarded to debtor's counsel, but $350 awarded to *creditor's* counsel, under Bankruptcy Rule 9011, because of bad faith of *debtor's* counsel in not requesting creditor's counsel to desist from technical stay violation before filing suit); *In re Randy Homes Corp.*, 84 B.R. 799, 802–03 (Bankr. M.D.Fla.1988) (requests of debtor's general counsel and special counsel for fees of $7156.25 and $5062, respectively, reduced to $3500 and $750, respectively); *In re Davis*, 74 B.R. 406, 411 (Bankr.N.D.Ohio 1987) (debtor held entitled to award of fees because of "having to resort to the courts to enforce his rights," but award only $1254); and *In re Outlaw*, 66 B.R. 413, 419 (Bankr.E.D.N.C.1986) (award of fees limited to $200).

■ There have been several recent decisions of this court addressing requests by debtors under § 362(h), but none of them have discussed, in depth, the issue of when attorneys' fees to the debtor's counsel should be imposed as a remedy against an offending creditor. The seminal decision in this area is *In re Wagner*, 74 B.R. 898, 904 (Bankr.E.D.Pa.1987), in which Judge Fox, addressing the "innocence" issue in classic prose, states that "knowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay." This phrase indicates a clear intention to disregard any defense of a creditor based upon a "good faith" belief that a known bankruptcy does not effect a stay as to any conduct to which

the court ultimately holds that it does apply. The same wording was echoed by Judge Fox in *In re Stephen W. Grosse, P.C.*, 84 B.R. 377, 384 (Bankr.E.D.Pa.1988), a decision affirmed by Chief Judge Fullam in a Memorandum and Order of January 27, 1989, 96 B.R. 29. It has also been quoted by other sitting judges of this court with approval. *In re Boston Business Machines*, 87 B.R. 867, 871 (Bankr.E.D.Pa. 1988) (Scholl, J.); and *In re Aponte*, 82 B.R. 738, 742 (Bankr.E.D.Pa.1988) (Twardowski, Ch.J.). We also note that *Grosse*, 84 B.R. at 383; and *Boston Business*, 87 B.R. at 871, hold that, once a creditor ignorant of the stay at the time of an action becomes aware of it, he is charged with a duty to undo his violative acts despite his initial ignorance of the existence of the bankruptcy filing. *Compare Clark, supra* 69 B.R. 889 (stay is imposed even if creditor and debtor are unaware of its impact and fail to assert its protections). To the extent that *In re Abt*, 2 B.R. 323, 325 (Bankr.E.D.Pa.1980), relied upon by the Defendant here, holds to the contrary, it has therefore been effectively overruled.

In *Boston Business*, 87 B.R. at 872; *Grosse*, 84 B.R. at 388 n. 16; *Aponte*, 82 B.R. at 744; and *Wagner*, 74 B.R. at 906, attorneys' fees were awarded to the debtor's counsel against the creditor violating the stay, but were not quantified. An ultimate award of $15,841 in attorneys' fees and costs was affirmed by Judge Fullam in *Grosse*. However, in all of those cases, the violations of § 362 were rather clear, and some actual damages were awarded to the respective debtors as well as attorneys' fees.

More focused on the issue of an award of fees in a case where the violation of § 362 was less clear are two more recent decisions of this court, *In re Sechuan City, Inc., Sechuan City, Inc. v. North American Motor Ins. Inc.*, 96 B.R. 37, 44 (Bankr. E.D.Pa.1989); and *In re University Medical Center*, 93 B.R. 412, 418–19 (Bankr.E. D.Pa.1988). In *Sechuan City*, Judge Fox held that "the [first amendment] issue surrounding the creditor's conduct was not frivolous," 96 B.R. at 44, thereby requiring denial of any punitive damages. However,

$3,000 in actual damages was awarded. In addition, attorneys' fees were awarded, but only in the amount of $600.

In *University Medical Center*, we noted that the debtor had neither sought nor proven a right to any consequential damages, other than return of funds received in violation of the stay, except attorneys' fees and costs. We recognized that the issue of whether the stay had been violated by the course of events in issue had probably been decided to the contrary in the past, but had been clearly established in our opinion of August 12, 1988, involving the self-same government agency, in *In re St. Mary Hospital*, 89 B.R. 503 (Bankr.E.D.Pa.1988). We also observed that we were "reluctant to punish governmental agencies for actions which attempt to preserve the public fisc in any area in which the applicable principles are not settled," 93 B.R. at 418, citing our denial to allow any such fees in *In re Johnson–Allen*, 69 B.R. 461, 471 (Bankr.E.D.Pa.1987), *rev'd sub nom. Commonwealth of PA., Dep't of Public Welfare v. Johnson–Allen*, 88 B.R. 659 (E.D.Pa.1988). However, we also pointed out that it would have been inconsistent with our statements in *St. Mary*, 89 B.R. at 506–07, 514, complimenting the government's professionalism in seeking guidance before effecting action that we ultimately found violative of the automatic stay there to have not condemned the failure of the government to do likewise in the *University Medical Center* case. 93 B.R. at 418. We therefore awarded the plaintiff's counsel attorneys' fees incurred from August 12, 1988, forward, on the theory that the government was obliged to adhere to the precedent in *St. Mary* established on that date thereafter.

Having considered all that has gone before on this subject, we must now focus our own thinking on this topic. First, we must consider the policy behind § 362(h). Obviously, its effect is to clarify and broaden the powers of bankruptcy judges to impose sanctions and thereby discourage violations of the automatic stay. Therefore, we submit that its terms should be construed as broadly as possible, in order to discourage creditors from violating the automatic stay and allowing bankruptcy judges to impose a range of stiff penalties if stay violations nevertheless take place.

We believe that the statements in *AM International* that creditors should be encouraged to seek declaratory relief before acting in circumstances where they are on the cutting edge of committing a stay violation are well taken, at least as applied to § 362(h). Allowing ignorance of the law or "good faith" to be a defense to monetary penalties for stay violations will only encourage ignorance, real or feigned. Encouragement of ignorance is not the message that bankruptcy judges should be sending to creditors in their § 362(h) decisions. The effect of interpretations which encourage ignorance will only serve to encourage stay violations and stir up litigation.

■ Therefore, we may have been overindulgent with the governmental creditors involved in *Johnson–Allen* and *University Medical Center*. It is true that they, unlike the Defendant here, had the public fisc to uphold. However, governmental creditors have attorneys available at their disposal to test the waters of whether a certain action will constitute a stay violation, and they should do so before plunging in with all of the power of governmental force behind them. The difficulty of an issue of the scope of this automatic stay should not be very relevant to the determination of the debtor's right to attorneys' fees under § 362(h). The more difficult the issue, the harder that the debtor will be pressed to vindicate his or her position. If the debtor loses a close issue, counsel will have labored without compensation. If counsel succeeds, the labor should be rewarded.

■ On the other hand, as the rather unusual result in *Houchens* portends, rewarding debtors too lavishly in § 362(h) actions will encourage a cottage industry of precipitous § 362(h) litigation. This is not to be encouraged either. It is the responsibility of the debtor to educate the creditor of the bankruptcy filing and its effect, and, if at all possible, avoid a crisis.

562 er

The debtor should encourage the offending creditor to either desist or, if the creditor refuses without resort to a higher authority, encourage the creditor to file a declaratory action prior to the time that a crises arises.

Having established these principles on the "good faith" issues and before applying these principles to the instant facts, we now address the other general issue raised herein, i.e., the significance of the requirement that, to recover attorneys' fees pursuant to § 362(h), the debtor must be "[a]n individual injured" by a stay violation.

This issue is emphasized in *Bain, supra*, 64 B.R. at 584, where the court states that "the Bankruptcy Court must determine that the individual seeking the award was indeed injured by the violation of the stay." It is also discussed in *In re Haan*, 93 B.R. 439 (Bankr.W.D.N.C.1988), wherein the court refused to grant any damages, including attorneys' fees, to a debtor whose vehicle, which he planned to surrender in any event, was repossessed by a creditor that had no notice of the bankruptcy filing. Although reluctant to allow a creditor to avoid liability "behind the fortunate (for them) circumstance of a debtor's thick skin," the court nevertheless stated, in the instant fact situation, "there is 'no harm—no foul' and no injury—no attorney's fees." *Id.* at 441. However we note that, in *Promower, supra*, the court awards the debtor $1,000, "representing reasonable compensation for the efforts involved in filing" for relief from a violation of the automatic stay, 56 B.R. at 623. This is consistent with the statement in *Davis, supra*, 74 B.R. at 411, that a debtor's need to "resort to the courts to enforce his rights" should trigger an award of attorneys' fees. Finally, in *Demp, supra*, 23 B.R. at 240, this court imposed fines of $250 against a creditor despite discrediting the debtor's claim for damages from "distress" arising from the creditor is violation of the automatic stay.

The recent cases decided in this jurisdiction cited above do not discuss the "injury" issue. There clearly were injuries and awards of damages to the debtors in *Se-*

*chuan City, Boston Business, Grosse, Aponte,* and *Wagner.* In *University Medical Center,* we allowed attorneys' fees and costs to the debtor despite a finding of no consequential damages. 93 B.R. at 418. However, we did order the defendant to return $15,000 recovered in violation of the stay, which was, in effect, an award of compensatory damages. *Id.* at 417.

■ However, this issue *was* discussed in another of our decisions, *In re Whitt*, 79 B.R. 611, 615–16 (Bankr.E.D.Pa.1987). There, we quoted from Judge Fox's dictum in *Wagner* that "[n]o damages will be awarded as a result of the violation of the automatic stay.... [i]f there was no evidence that the Debtor suffered any harm." 74 B.R. at 905. Supportive of this dictum is the subsequent Third Circuit Court of Appeals decision in *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81 84–85 (3d Cir.1988), in which a "mildly worded" collection letter was found not to have violated the automatic stay at all, and hence not give rise to damages under § 362(h). In contrast to *Brown,* in *Whitt* we found "no evidence of actual damages suffered by the Debtor" as a result of violations by a creditor which we also found *were* "in violation of the automatic stay." 79 B.R. at 616. However, finding also that these violations were not "serious," we refused to award either monetary damages or attorneys fees or costs under § 362(h) to the debtor's counsel in *Whitt. Id.* This result appears consistent with the result in *Haan:* the combination of no injury and a very mild stay violation will eliminate an attorneys' fees claim, even if the debtor does resort to the court for relief from a § 362(h) violation.

■ On the other hand, in light of our analysis of the policies behind § 362(h), we believe that counsel for a debtor who is jeopardized in any significant manner by a stay violation and reasonably resorts to court to remedy the violation, should recover at least some measure of damages. Thus, the "injury" requirement should be very broadly construed. However, in saying this, we cannot forget the policy of discouraging satellite fee litigation such as

is before us. Litigation pursued, as the litigation appeared to be in *Whitt*, simply to ascertain parties' rights as to a creditor's actions which, while possibly important as a matter of policy, did not place the debtor in any real jeopardy, should not be rewarded with attorneys' fees. Likewise, "unnecessary" litigation, such as that found to have been undertaken in *Haan,* should be discouraged.

We now apply the principles which we have developed to the facts presented in the instant case. We have no hesitancy in concluding that the Debtor here suffered some "injury" as a result of the defendant's conduct, as we have defined that requirement here. The Debtor clearly overplays her hand on this issue when she refers to "months of fear" suffered by her that she would lose the Home as the element of her injury. We would be disinclined to consider this element to have been established on this averment. First, there is no evidence of such "fear" in the record, either in the Stipulation of Facts or in the testimony of the Debtor on December 1, 1988. Secondly, we believe that the "fear," if present, was engendered by the Debtor's logical assumption that her mortgage payment delinquencies might result in the loss of the Home. From her perspective, it is doubtful that she had contemplated that a bankruptcy could save the Home. It is *particularly* doubtful that she contemplated that *her* bankruptcy would save the Home in light of the fact that it was titled to her father. Finally, the Debtor's bankruptcy filing, even with the security of the automatic stay in place to prevent the instant sheriff's sale, cannot dispel her fears of losing the Home entirely. She must make future payments towards the mortgage and cure her delinquency or pay off the mortgage to accomplish this end.

The Defendant, however, never raises the "injury" issue as a defense in its brief. Perhaps it concluded, as do we, that the Debtor's jeopardy of losing the Home, which was very real, and her need to resort to litigation to prevent its loss, which was equally real, satisfied this requirement.

We do query why the Debtor's counsel, in over two months, was unable to locate the *Black* case, cited in a reported case (*Capodanno, supra,* 83 B.R. at 289), which arose in the same office in the same firm as counsel for the Debtor in this case in the past year. We also question the timing of the legal proceeding ultimately filed. It could not have been filed any later. However, it clearly could have been filed sooner. Had it been filed sooner than the eve of the continued sheriff's sale, it might have been presented and resolved with far less pleadings and effort on the part of the Debtor's counsel. However, we do not doubt that litigation became necessary, at some point, to prevent the very significant consequences that could have resulted had the Home been sold.

These latter observations segue into the discussion of the Defendant's "good faith." Although the Debtor's counsel could have and probably should have cited the *Black* case to it, the existence of this case was in the public domain and as accessible to the Defendant as it was to the Debtor. Certainly, it is not the obligation of the Debtor to submit a comprehensive list of citations to a creditor or its counsel in order to have the creditor respect the stay. After all, it is the *automatic* stay of which we are speaking. If the Defendant's counsel was unaware of the *Black* case, that deficiency is not the fault of the Debtor or her counsel. We are, moreover, not certain that the *Black* case is a key to an otherwise inscrutable mystery regarding the applicability of the stay to the sale of the Home in issue here. Certainly, the issue, irrespective of the existence of the *Black* case, was close enough to have merited the Defendant's filing a declaratory judgment action before proceeding with and persisting in conducting of the sale. Had this approach been taken, there would presently be no issue of the right of the Debtor's counsel to attorneys' fees.

We do not think that the issue of the applicability of the stay here was really very difficult, particularly given the presence of § 1306(a)(1), after the title to the property passed to the Debtor. However, even assuming that it *was* difficult, we

decline to hold that this factor would eliminate the Debtor's claim for all attorneys' fees, pursuant to § 362(h). Plainly, if § 362(h) is to serve the policies behind its enactment, it should not.

We therefore determine that the Debtor's counsel is entitled to reasonable attorneys' fees for vindicating the Debtor's rights in this proceeding. Procedurally, regarding the amount of the fees requested, the Debtor's counsel has complied with *Meade Land, supra,* as we directed, itemizing each item for which compensation is sought and the time spent on each.

However, substantively, we are not prepared to allow the entire sum of $2,160.00 which the Debtor's counsel has requested. Specifically, harking back to our distaste for satellite fee litigation expressed at the outset, we shall disallow the five and a half hours spent on drafting the Stipulation of Facts and the fee motion *after* the merits of this proceeding had been resolved. Time spent in preparation of fee applications is disallowed entirely when the request is made from assets of a debtor's estate. *See, e.g., In re J.A. & L.C. Brown Co.,* 75 B.R. 539, 540 (E.D.Pa.1987); and *In re Shaffer–Gordon Associates,* 68 B.R. 344, 348–50 (Bankr.E.D.Pa.1986). Here, however, we could conceivably allow compensation for preparation of such an application, since payment will be made from the pocket of the non-debtor Defendant, not from assets of a debtor-estate, *i.e.,* this is comparable to a "statutory fee" case, not a "fund-in-court" case. *Compare id.*

 However, it is not clear to us that the efforts of the Debtor's counsel to collect its reasonable attorneys' fees were warranted, in light of the absence of evidence of the Defendant's refusal to respond to a reasonable demand for attorneys' fees. We generally make such a demand a pre-condition of any compensation for time spent on "statutory fee" applications, as a means of discouraging either party from taking a stance which we consider unjustified and thus fueling satellite fee litigation. Here, the parties' presentation of the issue made our entry of such an Order an impossibility. Such a condition

should, nevertheless, in our view, always be assumed by implication. *Cf. Houchens, supra* (failure to make a reasonable demand on the opposing party to rectify situation before proceeding with litigation may constitute bad faith). In the absence of any evidence of such a demand, which could have eliminated all of the services performed after the resolution of the case on the merits, we shall disallow all of the time spent on pursuit of the attorneys' fees issue by the Debtor's counsel.

The remaining entries on the fee application leave a residual demand for an award of $1500.00. However, given the manner of the presentation of these issues by the Debtor's counsel, we shall cut this figure to $1000. As we noted at page 562 *supra,* the Debtor's counsel failed to locate the case most directly on point to support the Debtor's position. Further, said counsel perpetuated "brinkmanship" by delaying the presentation of the issue to us in a timely fashion. If this "brinkmanship" was tactical, which we are not prepared to say that it was, it surely should not be rewarded. This conclusion may, to some degree, implicate the "good faith" and "injury" issues which we addressed herein. It appears to us the manner in which this matter was presented to us by the Debtor's counsel, moreso than the merits, resulted in the Defendant's staunch opposition. The injury caused to the Debtor from "fear" of losing the Home at the December 5, 1988, sheriff's sale was, in part, a function of the timing as well. The flurry of activity to prevent the sale could have been avoided by raising the matter in more timely and leisurely fashion. We believe that a reduction of the residual $1500.00 sought by the Debtor's counsel is therefore appropriate when the stakes of the litigation and the reasonable efforts necessary to accomplish the Debtor's ends are considered. *See In re Central Ice Cream Co.,* 841 F.2d 732, 734–35 (7th Cir.1988). Consistent with the awards in the cases cited at pages 558 –59 *supra,* we find that the reasonable attorneys' fees to which the Debtor's counsel is entitled is $1000.00.

An order awarding the Debtor's counsel attorneys' fees of $1000.00, pursuant to § 362(h), will therefore be entered.

### ORDER

AND NOW, this 22nd day of February, 1989, upon consideration of the Debtor's Motion for Award of Attorneys' Fees, and the stipulation of Facts and Briefs of the parties presented to us in reference to this issue, it is hereby ORDERED and DECREED as follows:

1. The Motion is GRANTED in part.

2. Defendant FIRSTRUST SAVINGS BANK shall pay the sum of One Thousand ($1,000.00) Dollars to the Plaintiff's counsel, COMMUNITY LEGAL SERVICES, INC., as attorneys' fees, pursuant to 11 U.S.C. § 362(h).