## In re MEMORIAL HOSPITAL OF IOWA COUNTY, INC.

### No. 87–C–401–C.

United States District Court,
W.D. Wisconsin.

Feb. 5, 1988.

Sheree L. Gowey, Asst. U.S. Atty., Patrick J. Fiedler, U.S. Atty., Madison, Wis., for appellant.

Kenneth J. Erler, Whyte & Hirschboeck, Madison, Wis., for Memorial Hosp.

## ORDER

CRABB, Chief Judge.

Creditor, the Health Care Financing Administration and its fiscal intermediary, Blue Cross and Blue Shield United of Wisconsin, appeal the bankruptcy court's holding that they were in contempt for violating the automatic stay under 11 U.S.C. § 362(a)(3), (6), by improperly recovering prepetition overpayments made to debtor, Memorial Hospital of Iowa County, Inc., subsequent to the filing of Memorial's Chapter 11 bankruptcy petition. For the reasons stated herein, the decision of the bankruptcy court is affirmed.

The primary issue on appeal is whether by continuing to provide Medicare services after filing for bankruptcy, Memorial effected an implied assumption of an executory agreement that left Blue Cross free to collect prior overpayments without obtaining bankruptcy court approval. The bankruptcy court held that bankruptcy court approval must precede any collection efforts, and I agree.

In his written decision, the bankruptcy judge referred to certain facts without explaining the source of his references. I have been unable to find the source, although some statements in the record suggest that there was a stipulation of facts by the parties. The bankruptcy judge's omission is unfortunate but not critical because the facts are not disputed by the parties on appeal.

### Facts

On February 1, 1974, Memorial agreed to be a provider of medical services under the Medicare program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, *et seq.* Memorial was reimbursed by Health Care Financing Administration through its designated fiscal intermediary, Blue Cross. The hospital received its reimbursement according to the partial interim payment method. Partial interim payments are estimated and paid in advance based on allowable in-patient operating costs incurred in the year immediately preceding the payment. 42 C.R.F. 413.40(h)(1). At the end of each fiscal year, Memorial prepared a cost report, which was audited by Blue Cross. On the basis of the audit, the government would reclaim over- or underpayments made in prior partial interim payments. 42 U.S.C. § 1395g(a).

Memorial filed a Chapter 11 bankruptcy petition on February 20, 1986, but continued to provide Medicare services and receive partial interim payments pursuant to the provider agreement. After Memorial filed the bankruptcy petition, the government notified the hospital that it had been overpaid $26,000 for fiscal year 1986, and $48,545 for fiscal year 1984.

On March 26, 1986, Blue Cross gave Memorial the option of making a lump-sum payment or applying for an extended payment plan before it began reducing the hospital's Medicare remittances by 20%. Memorial's attorney advised Blue Cross that Memorial was in bankruptcy, and any attempt by Blue Cross to enforce a unilateral reduction in payments due to the hospital would be a violation of the automatic stay provided by 11 U.S.C. § 362.

On May 16, 1986, Blue Cross reduced its payment to Memorial by 20%. Similar reductions continued through August 8, 1986. During the thirteen week period a total of $41,110 was withheld. During this period, Blue Cross again reviewed Memorial's partial interim payments and determined that $20,531 was owed the hospital. Rather than paying the hospital, Blue Cross offset $20,531 against Memorial's debt to Medicare. After these reductions, Memorial still owed Medicare $14,734 plus interest.

On August 12, 1986, Memorial filed a motion for a finding of contempt against Blue Cross and Health Care Financing Administration based on their alleged violation of the automatic stay.

### Opinion

■ Blue Cross and Health Care Financing Administration, both of which I will

refer to as "the government," for convenience, contend that the agreement with Memorial is a single executory contract that Memorial assumed implicitly by continuing to provide Medicare services after the bankruptcy filing. The government contends as well that its deduction of sums from the monthly payments in progress are recoupments rather than setoffs.[1] Further, it contends that, because the deductions are recoupments, it cannot be held to have violated the automatic stay because the stay does not apply to recoupments. Finally, it asserts that it is mandated by the Social Security Act to recoup prior overpayments to providers and that the entire statutory scheme covering Medicare provider reimbursement would be undermined if I were to affirm the bankruptcy judge's holding that recovery of overpayments must be preceded by either a grant of relief from stay or court approval of assumption of an executory contract.

Memorial's only argument on appeal is that its Medicare service agreement with the government is a series of contracts, renewed each year, and that deductions for overpayments made in years prior to its bankruptcy are setoffs that do not entitle the government to any special treatment.

The bankruptcy judge took the position that any dispute either in the characterization of the provider agreement as one contract or a series, or in the nature of the deductions, is irrelevant. Under 11 U.S.C. § 365, bankruptcy court approval is required before a debtor may assume or reject an executory contract. Either the debtor or the creditor may request court approval or rejection of the contract. Neither party having done so in this instance, and the government not having sought relief from the stay, the government was in violation of the § 362 automatic stay when it began withholding sums from current payments for prior overpayments.

In sum, all that the bankruptcy judge held was that bankruptcy court approval must precede the collection of prior overpayments under an executory contract. This holding is in full accord with the language and purpose of the Bankruptcy Code.

One of the principal benefits for the debtor of filing a bankruptcy petition is obtaining the protection of the automatic stay provided in Section 362. Under subsections 362(a)(3) and (6) the filing of a bankruptcy petition operates as an automatic stay of "any act to obtain possession of property of the estate or of property from the estate ..." or "any act to collect, assess, or recover a claim against the debtor that arose before commencement of the case...." The stay also forbids the setoff of a prepetition debt owing to the debtor against any claim against the debtor. § 362(a)(7).[2]

"The general policy behind this section is to grant complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor's assets before orderly distribution to the creditors can be effected." *Penn Terra Ltd. v. Department of Environmental Resources*, 733 F.2d 267 (3rd Cir.1984); *see also* S.Rep. No. 95–989, 95th Cong., 2d Sess. 51, *reprinted in* U.S.Code Cong. & Ad.News 5787, 5835.

Subsection 362(b) lists a few narrowly drawn exceptions to the automatic stay. By excepting an act from the stay, the statute merely places the burden on the trustee to move for relief if the trustee seeks protection, rather than requiring the stayed party to request relief from the stay.

---

**1.** A setoff is based on mutual debts, which need not arise from the same transaction. *See* 11 U.S.C. 553. A recoupment claim arises from the same transaction from which the plaintiff's cause of action arose. Under common law pleading rules relating to recoupment, a defendant could meet a plaintiff's claim with a countervailing claim that arose "out of the same transaction." *See* J. Moore, 3 Moore's Federal Practice ¶ 13.02, at 13–13 n. 1 (2d ed. 1985).

**2.** Section 553 prohibits setoff without the lifting of the automatic stay, whereas recoupment is not discussed in section 553 or expressly mentioned in section 362(a)(7). The bankruptcy judge found that recoupment, although it is not prohibited in express terms, is clearly within the broad language of the automatic stay, and I agree.

The stay does not prevent a creditor from filing a proof of claim in a bankruptcy case, or prevent the filing of motions in the bankruptcy court for relief from the stay. A creditor may request such relief at any time during the case. If relief is indicated, the bankruptcy court may terminate, annul, modify, or condition the automatic stay. § 362(d).

Section 365 authorizes the trustee or debtor in possession to reject or assume executory contracts, subject to court approval. An executory contract is one under which the obligations of the debtor and the other party are both so far unperformed that the failure of either to perform "would constitute a material breach excusing the performance of the other." 57 Minn.L.Rev. 460 (1973) (Professor Vern Countryman's definition of executory contracts for Bankruptcy Code purposes); *See also In re Monsour Medical Center*, 8 B.R. 606 (Bankr.W.D.Pa.1981), *aff'd*, 11 B.R. 1014, 1018 (W.D.Pa.1981).

Section 365 sets forth specific considerations and limitations bearing on the court's determination of the propriety of assumption or rejection of an executory contract. In a rehabilitation case, the court may approve assumption of an executory contract up until confirmation of the plan. § 365(d)(2). However, at any time after the bankruptcy petition is filed, the creditor may move the court to compel assumption or rejection. § 365(d)(2). This provision was intended to avoid the situation in which parties in contractual relationships with the debtor were left in doubt concerning their status in relation to the estate.

When an executory contract is assumed, valid prepetition claims for default must be cured by the debtor. § 365(b)(1) (upon assumption, the debtor must cure any defaults, or provide adequate assurance of a prompt cure; compensate the nondebtor party for any actual pecuniary loss caused by the default or assume prompt compensation; and provide the nondebtor party with adequate assurance of future performance under the contract).

It is difficult to understand why the government preferred to litigate an expensive appeal rather than accept the bankruptcy court's invitation to avoid the contempt simply by filing a motion in bankruptcy court to compel Memorial to assume the contract and effect a cure. The bankruptcy court had made it clear that it considered the characterization of the contract an open question; it had not decided that deductions of prior year overpayments were setoffs rather than recoupments. I find it particularly difficult to understand the government's argument that the bankruptcy court's ruling invalidates the Medicare statutory and regulatory scheme. In my view the argument is wanting in several respects.

First, creditor fails to recognize that the automatic stay is applicable to all "entities," including governmental units. *See* § 101(14), (24). The legislative history is clear that, in general, this was intended to extend to governmental entities as well as private ones:

> With respect to stays issued under other powers, or the application of the automatic stay to government actions, this section and the other section mentioned are intended to be an express waiver of sovereign immunity of the Federal Government....

S.Rep. No. 95–989, 95th Cong., 2d Sess. 51, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5837; H.Rep. No. 95–595, 95th Cong., 2d Sess. 342, *reprinted in* 1978 U.S. Code Cong. & Ad.News 5963, 6299. Furthermore, Congress did create an exception to the automatic stay to permit governmental units to commence or continue actions to enforce their police or regulatory powers and to enforce nonmonetary judgments in pursuit of these powers. § 362(b)(4), (5). The fact that this was the only exception implies that such governmental units are otherwise affected by the stay. There is no statutory support for the government's suggestion that actions under the Social Security Act are exempt from the automatic stay.

Second, the government fails to acknowledge that the automatic stay merely prevents creditors from engaging in affirmative actions to recover prepetition debt

without obtaining court approval. The creditor is free to seek relief from the automatic stay, or to request the bankruptcy court to order the trustee or debtor in possession to assume the executory contract. Once a debtor's trustee assumes an executory contract with court approval, the debtor may well be required to reimburse the government for prepetition overpayments. *See In re Monsour Medical Center*, 8 B.R. 606. In fact, in this case the bankruptcy judge stated that if the contract implicated recoupment, "Memorial will have to cure all the overpayments made for those years if it wishes to assume the Medicare contract." (Docket # 6, p. 5).

In short, the automatic stay simply gives debtors a "breathing spell," in which creditors may not recover debt without court supervision. It does not invalidate the Medicare statutory and regulatory scheme.

Third, the government contends that 42 C.F.R. § 413.64(i) *mandates* adjustment for overpayments made prior to bankruptcy, overriding any bankruptcy law to the contrary. This provision provides that in the event of bankruptcy, any payment to the provider "shall be adjusted by the intermediary, notwithstanding any regulations or program instruction regarding the timing or manner of such adjustment, to a level necessary to insure that no overpayment to the provider is made." 42 C.F.R. § 413.64(i) (previously codified at 42 C.F.R. § 405.454(k)). I have explained above that the Medicare regulations are not exempt from the reach of the automatic stay. Furthermore, the government's interpretation of the regulation is not supported by the language of this provision, which provides for adjustment to insure that no overpayment "is made." The language "is made" indicates that, once bankruptcy is likely or is declared, the government may adjust post-bankruptcy payments to insure that no future overpayment is made. The government may adjust each individual payment rather than rely on the statutory reimbursement scheme in which overpayments and underpayments are adjusted after-the-fact based upon a cost report at the end of the year. § 1395g(a).

Finally, the government relies on several cases in which the courts have examined the assumption of executory contracts and have upheld postpetition recoupment of prepetition overpayments.

The government argues that *In Matter of Whitcomb & Keller Mortgage Co.*, 715 F.2d 375 (7th Cir.1983), supports its contention that a debtor may effect an implied assumption of an executory contract by continued performance. In *Whitcomb*, the Court of Appeals for the Seventh Circuit clearly stated that section 365(a) provides that "[a]ssumption or adoption of the contract can only be effected through an express order of the judge." *Id.*, at 380; *citing In re American National Trust*, 426 F.2d 1059, 1064 (7th Cir.1970) (quoting 6 Collier on Bankruptcy 576–80 (14th ed.)). The government points out correctly that in *Whitcomb*, the court discussed whether the debtor exhibited any intention of assuming the contract. However, the court focused primarily on the question whether the bankruptcy court had exhibited any intention of approving the assumption of the contract when it issued an injunction prohibiting the creditor from discontinuing services to the debtor. The appellate court found that the injunction was intended to give the debtor time to decide whether to assume or reject the contract, and thus, the court could find no indication that the injunction may have signaled the bankruptcy court's approval of the executory contract. The appellate court was primarily concerned with correctly interpreting the bankruptcy court's injunctive order. To suggest that the court's discussion constitutes an implicit sanction of an implied assumption by the debtor is to seize upon words that had little or no import.

*In re Monsour Medical Center*, 8 B.R. 606 (Bankr.W.D.Pa.1981), *aff'd* 11 B.R. 1014 (W.D.Pa.1981), involved the determination of the Medicare contractual relationship between a medical center and the government. The debtor had filed a petition in bankruptcy. The creditor followed the two statutorily sanctioned avenues of relief from the automatic stay: it requested the court to lift the automatic stay and to order the medical center to assume or

reject the executory contract. The hospital filed a stipulation accepting whatever contract the court found to be in existence and executory on the date of filing its bankruptcy petition. 8 B.R. at 608. The bankruptcy court found that the medical center and the government were parties to two executory contracts as of the date of filing, approved the medical center's assumption of the executory contract, and permitted recoupment of the prepetition overpayments.

In lifting the automatic stay and permitting recoupment in *Monsour*, the court relied specifically on the hospital's assumption of all executory contracts. The court relied upon the well-settled rule that the debtor who elects to assume an executory contract must accept the burdens as well as the benefits. 11 B.R. at 1018. As noted earlier, § 365(b)(1) *requires* the full satisfaction of valid prepetition claims for defaults by the debtor under an executory contract when the contract is assumed. Thus, rather than supporting the government's contention that a creditor may engage in self-help and recoup prepetition overpayments without court approval, the *Monsour* case demonstrates that a creditor must seek court relief from the automatic stay, and court approval of the assumption of an executory contract, prior to recoupment of prepetition overpayments.

In *In re Yonkers Hamilton Sanitarium Inc., d/b/a/ Yonkers Professional Hospital*, 22 B.R. 427 (Bankr.S.D.N.Y.1982), *aff'd* 34 B.R. 385 (S.D.N.Y.1983), the debtor/hospital sought to recover the government's postpetition recoupment of prepetition Medicare overpayments. The bankruptcy court found that if neither party sought court approval of an executory contract, and the debtor continued to participate in the Medicare program, the debtor must bear the burdens and obligations of the contract as well as the benefits. *Yonkers*, 22 B.R. at 435, *citing Monsour.* The court found an implied assumption of the executory contract, and thereafter required the debtor to cure the prepetition defaults pursuant to § 365(b)(1). *Id.; see also In re B & L Oil Company*, 782 F.2d 155, (10th Cir.1986) (court did not explicitly approve the executory contract's assumption; but permitted recoupment, relying upon *Yonkers* and the well-settled executory contract rule that debtor who elects to assume an executory contract must accept the burdens as well as benefits); *In Re Midwest Service and Supply Co., Inc.*, 44 B.R. 262 (D.Utah 1983) (debtor and creditor need not have sought court approval of the bankruptcy court; as long as the debtor continues to receive the benefits under a contract, it must also bear the burdens); *In re Provident Hospital and Training Association*, case no. 87–B–11069 (Sept. 16, 1987) (same).[3]

■ I disagree with the *Yonkers, Midwest Service and Supply*, and *In re Provident Hospital* courts to the extent that they conclude that a debtor's continued re-

---

**3.** On a motion to reconsider in *Provident Hospital*, the bankruptcy court held that although a debtor may assume an executory contract without express consent of the court, such an assumption was permissible only in circumstances in which the facts indicate clear, unmistakable actions by the debtor evidencing an irrevocable intention to assume the contract. *Id.*, case no. 87–B–11069 (Jan. 6, 1988). The bankruptcy court considered how to treat an executory contract at the stage where the debtor has neither assumed nor rejected the contract, stating that if the "debtor elects to continue to receive benefits from the other party pending a decision to reject or assume the contract, the debtor in possession is obligated to pay the reasonable value of the services, which, depending on the circumstances of a particular contract, may be what is specified in the contract. *Id.*, at p. 5, (quoting *NLRB v. Bildisco & Bildisco*,

465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). The bankruptcy court concluded that the terms of the Medicare contract called for recoupment. I cannot agree with this conclusion. The Supreme Court held in *Bildisco* that filing of a petition in bankruptcy means that the executory contract is no longer immediately enforceable, and may never be enforceable again. 465 U.S. at 532, 104 S.Ct. at 1199. Additionally, the Court held that the debtor was obliged to pay the reasonable value of the services. It does not follow from this that the creditor may engage in self-help to force the debtor to abide by the terms of the prepetition contract. In *Provident Hospital* the bankruptcy court's treatment of the executory contract in the gap period nullifies the statutory requirement of bankruptcy court supervision of relief from the automatic stay and assumption of executory contracts.

lationship with the creditor justifies recoupment of prepetition contract claims in the absence of court approved assumption of the contract. *See also In re Matter of Reda,* 54 B.R. 871, 874, 880 (Bankr.N.D.Ill. 1985) and cases cited therein. Although these courts have recognized a limited exception to the requirement of court approval of assumption of executory contracts, I am unpersuaded that an exception is justified.

The cases provide no rationale for preferential treatment of a creditor's prepetition claims in a recoupment situation; they simply rely on the executory contract rule that in continuing to perform after filing the petition, a debtor has accepted willingly the benefits and therefore must also assume the burdens.

Recognition of an exception to the requirement of court approval of assumption of executory contracts nullifies the clear and unambiguous statutory language of sections 362 and 365. I find no justification for avoiding statutorily established bankruptcy court supervision to determine whether a contract implicates a setoff or a recoupment, whether relief from the automatic stay is warranted in either case, whether an executory contract is involved, and whether the executory contract should be accepted or rejected. Congress did not intend to leave these determinations to individual creditors.

Bankruptcy court supervision accords with the purposes of the automatic stay: immediate, albeit temporary, relief to the debtor from creditors, and prevention of dissipation of the debtor's assets before orderly distribution to the creditors can be effected. Creditor self-help denies the trustee or debtor the opportunity to determine whether to assume or reject the contract and undermines the congressional intent that debtors obtain fresh starts, free from the immediate financial pressures that caused them to go into bankruptcy.

In this case, creditor has neither sought relief from the automatic stay pursuant to section 362(d) nor requested the bankruptcy court to require the hospital to assume or reject its executory contract, pursuant to § 365. Although the bankruptcy court stayed the effective date of its order for sixty days in order to allow creditor to file a motion with the bankruptcy court to compel assumption or rejection of the executory contract, creditor chose not to pursue this avenue.

Accordingly, I affirm the bankruptcy court's order finding creditor Blue Cross and Health Care Financing Administration in contempt for violation of the stay under 11 U.S.C. § 362(a)(3), (6).