**In re UNIVERSITY MEDICAL CENTER**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services.**

**Civ.A. No. 89–0411.**

United States District Court, E.D. Pennsylvania.

March 11, 1991.

---

Thomas Tropp, Mesirov Gelman Jaffe Cramer & Jamieson, William Frey, Wolf Block Schorr & Solis–Cohen, Philadelphia, Pa., for University Medical Center.

Virginia Powel, Asst. U.S. Atty., Beverly Dennis, III, Office of the Gen. Counsel, Dept. of Health & Human Services, Richard Gorelick, David Bongiovanni, Joseph Simmons, Deputy in Charge of Bankruptcy Operations, Philadelphia, Pa., for Sullivan.

## MEMORANDUM & ORDER

GAWTHROP, District Judge.

On December 7, 1988, a bankruptcy court for the Eastern District of Pennsylvania ordered defendant and appellant, Louis W. Sullivan, United States Secretary of Health and Human Services, to pay plaintiff and appellee, the University Medical Center, funds that the Secretary had withheld from the plaintiff for Medicare services that the plaintiff had provided after filing for bankruptcy. 93 B.R. 412. The bankruptcy court also ordered that the Secretary pay prejudgment interest on the sums withheld and plaintiff's costs and attorneys' fees. On December 28, 1990, I affirmed the bankruptcy court's order on the main claim, but reversed as to interest and fees. Both parties now seek reconsideration. For the reasons that follow, I shall deny both requests and reaffirm my previous order.

## BACKGROUND

The following is a summary of the facts, which are set out in full in my earlier opinion. *See In re University Medical Center,* 122 B.R. 919 (E.D.Pa.1990). The Secretary of Health and Human Services, (HHS), under authority granted by 42 U.S.C. § 1395cc, entered into a Medicare provider agreement with the University Medical Center, (UMC), under which UMC agreed to provide care to Medicare patients in return for HHS's agreement to pay the costs. HHS paid UMC, as provided by Medicare regulations, in periodic installments, based upon estimates of costs for care of individual patients, rather than actual costs. *See* 42 C.F.R. § 413.64(a)–(b). HHS had authority to reduce these interim payments by the amount of any net overpayment, as determined by annual accountings. *See* 42 U.S.C. § 1395g(a); 42 C.F.R. § 413.64(f).

UMC filed a voluntary petition in bankruptcy, under Chapter 11 of the United States Code, on January 1, 1988. Shortly thereafter, HHS announced that it would begin complete withholding of interim payments for Medicare services in order to recoup overpayment made to UMC since fiscal-year 1985. The parties reached a tentative agreement, and payments continued. However, on March 28, 1988, after the parties failed to reach a final accord, HHS again announced complete withholding. HHS ultimately withheld over $312,000 from UMC for Medicare services provided from the date of the bankruptcy filing until UMC ended all operations, on March 31, 1988.

## DISCUSSION

### I. *Violation of the Automatic Stay*

In my earlier opinion, I held that HHS's withholding of interim payments following UMC's filing in bankruptcy was a violation of the automatic stay provision of the bankruptcy code, 11 U.S.C. § 362(a), which prohibits creditors from taking any action outside of the bankruptcy proceeding to recover any outstanding debt, once a petition in bankruptcy is filed. In so holding, I determined that HHS's refusal to pay for postpetition Medicare services was an improper attempt to recover a debt owed by UMC on pre-petition services.

HHS now seeks reconsideration, under Fed.R.Civ.P. 59(e), on the ground that its withholding was not an attempt to recover a pre-petition debt, but rather was a refusal to pay again for services for which it had already paid. This argument was fully considered in the earlier opinion, and I find no basis to alter my judgment. However, I do offer the following to clarify the record.

■ HHS's argument is based on the doctrine of contractual recoupment. This doctrine provides that a person who owes money to someone who has filed in bankruptcy should not be deprived of equitable defenses to the bankrupt's claim by the fact of the filing and imposition of the automatic stay. *See Lee v. Schweiker,* 739

F.2d 870, 875 (3rd Cir.1984) (citing *In re Monongahela Rye Liquors*, 141 F.2d 864 (3rd Cir.1944). For example, if one party to a contract pays an advance for services to be performed by another, the paying party should not be prevented from applying the advance payment against the final bill, simply because the performing party filed in bankruptcy before any services were performed. *See e.g. In re Midwest Service and Supply Co, Inc.*, 44 B.R. 262 (D.Utah 1983).

In the present case, UMC sought payment from HHS for patient care provided after UMC's bankruptcy filing. While HHS did not deny a debt to UMC for these services, HHS attempted to raise the defense of prepayment, arguing that the net overpayment for the fiscal years of 1985, 1986 and 1987 amounted to prepayment for services provided in the beginning of 1988. I held that this was a mischaracterization, in light of the nature of the Medicare reimbursement scheme and the equitable foundation of the recoupment doctrine.

The bankruptcy code does not include a recoupment provision. Indeed, as stated by the Third Circuit in *Lee*, 739 F.2d at 875, the code prevents the set-off of post-petition obligations against pre-petition claims: i.e. a creditor who is obligated to a debtor in bankruptcy on a matter arising post-petition may not reduce the amount of the obligations by the amount of pre-petition claims against the same debtor. *See* 11 U.S.C. § 553(a) (allowing the set-off of mutual debts only when both arise pre-petition). Recoupment originated in case law as an equitable exception to this rule. *See Lee*, 739 F.2d at 875. Thus, the issue before the court was whether HHS's withholding was to be repudiated as an unlawful set-off of separate debts, or allowed as the exercise of an equitable defense against UMC's claim. HHS argued that the withholding was the exercise of an equitable defense because the debts owed by UMC and HHS arose on the same instrument. I declined to view the matter so mechanically, and found instead that the

debts were better described as distinct obligations, since the post-petition services and the amount of reimbursement UMC sought for these services was unrelated to the pre-petition services and the net amount HHS overpaid.

A ruling otherwise would allow an equitable exception to undermine the purposes of the automatic stay. The automatic stay was designed in part to provide debtors with breathing space from their creditors. *See Assoc. of St. Croix Condominium Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3rd Cir.1982) (citing H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6296–97). Under the Medicare reimbursement scheme, a provider that derives a substantial portion of its revenue from Medicare patients might be indebted to HHS, through no fault of its own, for amounts totalling hundreds of thousands or even millions of dollars[1] at the time of a bankruptcy filing. To allow HHS to recoup this debt by completely withholding interim payments as they accrue, would place the hospital in a stranglehold.

HHS argues that unless it is permitted to put hospitals under such a squeeze, federal taxpayers will be forced to pay for the same services twice. However, by observing the stay, HHS is only forced to postpone its claim for overpayment, and then only for a limited time. My ruling applies only to the period after the bankruptcy filing and before the Medicare provider decides to assume or reject the provider agreement. *See* 11 U.S.C. § 365. A debtor under Chapter 11 must elect to assume or reject any executory contract by the time a reorganization plan is confirmed, or, upon motion by the creditor, at an earlier time specified by the court. 11 U.S.C. § 365(d)(2). HHS never moved for UMC to assume the provider agreement in this case.

II. *Amount of Judgment*

In my previous opinion, I affirmed the bankruptcy court's order that HHS pay

---

**1.** According to HHS calculations, UMC owed $812,383 to HHS for overpayment in 1985, 1986 and 1987, at the time of its bankruptcy filing in 1988.

UMC the amount it would have paid for post-petition services, but for the attempt to recoup prior overpayment. HHS seeks clarification as to whether it is required to pay estimated costs, in accord with standard procedures, or whether it may pay UMC its actual costs. Medicare regulations provide that in the event of bankruptcy, any payment to providers "shall be adjusted ... to a level necessary to insure that no overpayment to the provider is made". 42 C.F.R. § 413.64(i). My order was not intended to alter this provision. It requires HHS to pay only the actual costs incurred by UMC for Medicare services UMC provided after filing for bankruptcy under Chapter 11, and for which UMC has yet to be reimbursed.

### III. Prejudgment Interest and Attorneys' Fees

■ Section 362(h) of the bankruptcy code provides that persons injured by a willful violation of the automatic stay shall receive actual damages, including costs and attorneys' fees. In my earlier opinion, I denied UMC's request for damages under this provision, finding that HHS's violation of the automatic stay was not "willful". I based this ruling on the fact that at the time of the withholding there was case law from other jurisdictions suggesting that HHS could recoup prior overpayment to Medicare providers, by withholding periodic payments, without violating the stay. *See In re Monsour Medical Center,* 11 B.R. 1014, 1018 (W.D.Pa.1981) (withholding permissible where provider agreement assumed); *In re Yonkers Hamilton Sanitar-*

*ium, Inc.,* 22 B.R. 427, 434 (Bankr.S.D.N.Y. 1982) (withholding permissible regardless of whether provider agreement is assumed); *but see In re Memorial Hospital of Iowa County, Inc.,* 82 B.R. 478 (W.D. Wis.1988) (withholding violates stay without assumption of provider agreement).

UMC seeks reconsideration, under Fed.R. Civ.P. 59(e) and 60(b), in light of a recent Third Circuit decision interpreting § 362(h).[2] *See In re Atlantic Business And Community Corp.,* 901 F.2d 325, 327 (3rd Cir.1990). *Atlantic Business* was decided before I reached my decision in this case. However, it was not briefed by the parties or addressed by me in that decision. Although I do not find *Atlantic Business* to be inconsistent with my decision, it is the only Third Circuit opinion addressing § 362(h) and merits discussion now.

In *Atlantic Business,* a landlord took physical steps to evict a tenant after the tenant had filed in bankruptcy. The landlord argued that the actions were lawful because the tenant was a tenant by sufferance and had no property interest that was protected by the stay. Rejecting this argument, the Third Circuit stated that the language of the statute "made it clear" that physical possession of property was sufficient to invoke the protection of the stay.[3] *See* 901 F.2d at 328. The court then affirmed an award of damages under § 362(h), finding that the landlord acted "intentionally and with knowledge of the automatic stay". *See* 901 F.2d at 329.

In doing so, the court adopted a definition of "willful" that had been adopted earlier by the Ninth Circuit, and was origi-

**2.** HHS urges that I reject Rule 59(e) motion as untimely, since UMC did not file within the ten days allotted by the rule. When my original order was entered, UMC was in process of converting its bankruptcy petition from Chapter 11 to Chapter 7, and there was confusion over whether the debtor or creditor's committee could file on UMC's behalf. I granted a three day extension to allow UMC to sort through that issue and put together its motion. UMC filed within the time allotted by my extension.

HHS argues now that the court had no authority under Fed.R.Civ.P. 6(b) to enlarge the time for filing under Rule 59(e). The extension was for three days, and was granted without opposition from HHS, at a time when my deci-

sion was placed in question by HHS's own Rule 59(e) motion. Assuming that an error was made, it was purely procedural and did not prejudice HHS in any manner. Further, UMC also bases its motion on Rule 60(b), which has no 10-day filing limitation. *See Sleek v. J.C. Penney Company,* 292 F.2d 256, 258 (3rd Cir. 1961). Rule 60(b)(6), which allows the court to grant relief from judgment for "any other reason justifying relief" provides an adequate basis for me to consider UMC's motion.

**3.** Section 362(a)(3) provides that a bankruptcy petition acts as a stay of "[a]ny act to obtain possession of property of the [debtor] or ... from the [debtor]".

nally articulated by a bankruptcy court in the District of Columbia. *See* 901 F.2d at 329 (citing *In re Bloom,* 875 F.2d 224, 227 (9th Cir.1989); *INSLAW, Inc. v. United States,* 83 B.R. 89, 165 (Bankr.D.D.C. 1988)). The *INSLAW* court held that a creditor "willfully" violates the automatic stay, within the meaning of § 362(h), if the creditor "knew of the automatic stay" and the "actions which violated the stay were intentional", regardless of whether the creditor had specific intent to violate the stay, or acted in good faith. *See Atlantic Business,* 901 F.2d at 329; *INSLAW,* 83 B.R. at 165.

UMC asks this court to read *Atlantic Business* to mean that an act taken with knowledge that a bankruptcy petition has been filed is "willful", within the meaning of § 362(h), whenever the act is ultimately found to be in violation of the automatic stay. *See In re Aponte,* 82 B.R. 738, 742 (Bankr.E.D.Pa.1988) (willfulness requirement refers to deliberateness of conduct and knowledge of bankruptcy filing, not to specific intent to violate order). While I recognize the validity of this statement generally, I do not find that the bankruptcy code or *Atlantic Business* requires me to adopt it without exception.

The legislative purpose behind § 362(h) and the "willfulness" requirement is not clear. *See In re Wagner,* 74 B.R. 898, 902 (Bankr.E.D.Pa.1987); 2 *Collier on Bankruptcy,* § 362.12, at 362–79 (15th Ed.1987); *see also In re Prairie Trunk Ry.,* 112 B.R. 924, 931 (Bankr.N.D.Ill.1990) (noting absence of legislative history). Section 362(h) was added to the act in 1984. Before its addition, courts awarded damages for violations of the automatic stay, in the same manner as for violations of court ordered stays, under the theory of civil contempt. *In re Wagner,* 74 B.R. at 902; *see also e.g. Matter of Carter,* 691 F.2d 390 (8th Cir. 1982) (affirming order holding party in contempt for violating automatic stay and order holding party to pay compensatory damages and attorneys' fees). Since the implementation of § 362(h), practitioners and courts have continued to use the rhetoric of civil contempt when seeking damages for automatic-stay violations. *See In re Learn,* 95 B.R. 495, 496 n. 1 (Bankr.N.D. Ohio 1989) (noting that party who moved for contempt sanctions for violation of stay should have filed under § 362(h)); *In re Santa Rosa Truck Stop, Inc.,* 74 B.R. 641, 643 (Bankr.N.D.Fla.1987) (holding party "in civil contempt" and "subject to the assessment of damages pursuant to ... § 362(h)").

Noting the relationship between § 362(h) and civil contempt, the bankruptcy court in *In re Wagner* concluded that Congress passed § 362(h) to supplement and clarify the traditional contempt remedy. *See* 74 B.R. at 902–903. This interpretation is supported, circumstantially, by the timing of the amendment with respect to a landmark Supreme Court opinion that placed the availability of the contempt remedy in doubt. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Northern Pipeline,* the Supreme Court ruled that the 1978 Bankruptcy Act violated the constitutional principle of separation of powers by granting what amounted to Article III powers to bankruptcy courts, which are established under Article I. *See* 458 U.S. at 87, 102 S.Ct. at 2880. In response, Congress passed the 1984 amendments, which repealed the provisions of the 1978 Act that granted the bankruptcy courts general jurisdictional power. By so doing, Congress placed the contempt power of bankruptcy courts in doubt. At least one circuit court has ruled that the 1984 Amendments abrogated the bankruptcy courts to issue contempt sanctions. *See In re Sequoia Auto Brokers Ltd., Inc.,* 827 F.2d 1281, 1289 (9th Cir. 1987). It is possible that Congress, realizing that its 1984 amendments would have this effect, included § 362(h) in the amendments, to ensure that bankruptcy courts would continue to have contempt powers in the context of violations of the automatic stay.

Recognizing § 362(h) as a codification of the contempt remedy, I analogize in my earlier opinion to the law of civil contempt,

to determine whether HHS's violation was "willful", and whether compensatory damages should be awarded in this case. The Third Circuit has held that a person should not be held in contempt of a court order unless the order gives fair warning that his or her acts are forbidden. *See I.R.S. v. Norton,* 717 F.2d 767, 774 (3rd Cir.1983) (overturning contempt sanction based on an ambiguous order). UMC argues that this doctrine applies only to criminal contempt. However, the *Norton* court declined to determine whether the order there sounded in criminal or civil contempt, *see* 717 F.2d at 774, and the doctrine has been applied in other civil contempt cases. *See International Brotherhood of Teamsters v. Western Pennsylvania Motor Carriers Association,* 660 F.2d 76, 82 (3rd Cir.1981); *Ford v. Kammerer,* 450 F.2d 279, 280 (3rd Cir.1971).

 The rule is one of basic fairness. A court should not sanction a person for violating an order when the person acts in a manner that the order can reasonably be read to allow. This is not a matter of relieving a person of contempt liability for believing in good faith that his or her acts were lawful. A good-faith, yet mistaken, reading of an order is properly a defense only in criminal contempt proceedings. *See Waste Conversion v. Rollins Environmental Services,* 893 F.2d 605, 609 (3rd Cir.1990). Rather, it is a matter of placing the burden of specificity on the court. *See Ford,* 450 F.2d at 280. If a person acts contrary to the intent behind a court order, but not contrary to the actual language used, the act will not be considered contumacious, at least not until the language is clarified. The court must first give fair warning of the act prohibited.

 The analogy to the context of the automatic stay is imperfect. In the standard contempt proceeding the focus is on the meaning of a court order; in a proceeding under § 362(h), the focus is on the meaning of the automatic order imposed by the bankruptcy code. However, given the relationship between § 362(h) and civil contempt, I found the analogy to be persuasive. In those exceptional circumstances where the filing of a bankruptcy petition cannot itself be considered fair warning to the creditor that its acts fall within the stay, sanctions under § 362(h) should not be awarded.

There is support for this rule in case law. Other bankruptcy courts have held that where there is disagreement among experts on the application of a stay, a contempt sanction of damages under § 362(h) should not issue. *See In re Zunich,* 88 B.R. 721, 726 (Bankr.W.D.Pa.1988); *In re Smith,* 81 B.R. 888, 897 (Bankr.W.D.Mich. 1988). *But see In re Littke,* 105 B.R. 905, 911 (Bankr.N.D.Ind.1989) (sanction proper under § 362(h) despite split in authority on issue of violation).

The bankruptcy court in this case followed this rule, refusing to grant damages under § 362(h) because of the lack of clarity regarding the application of the stay. Recognizing that authority existed in this and other jurisdictions that could be read to support the lawfulness of withholding, the bankruptcy court declined to award damages under § 362(h) for the period beginning with UMC's withholding. *See In re University Medical Center,* 93 B.R. 412, 418 (Bankr.E.D.Pa.1988).[4] Instead, the bankruptcy court awarded damages from the date of its decision in a parallel case, *In re St. Mary Hospital,* 89 B.R. 503 (Bankr. E.D.Pa.1988), which the court believed to

---

**4.** The court stated that it was "most reluctant to punish governmental agencies for actions which attempt to preserve the public fisc in an area in which the applicable principles are not settled". *In re University Medical Center,* 93 B.R. at 418. The bankruptcy court has since distanced itself somewhat from this holding, stating in *In re McLaughlin,* 96 B.R. 554, 561 (Bankr.E.D.Pa. 1989) that it "may have been overindulgent with the governmental creditor[ ] in … *University Medical Center".* The court was there concerned generally that a "good-faith" defense would "encourage ignorance of the law, real or feigned". 96 B.R. at 561. As stated earlier, an exception for lack of clarity in the stay order is not the same as a good faith defense. Here, creditors are not excused for ignorance, but

settle the law in the area.[5] *See* 93 B.R. at 418–19.

 This is not to say that the application of the stay must be certain before a violation can be deemed willful. Since the policy of the automatic stay is best served when parties seek to resolve uncertainties through the judicial process before taking action that might be a violation, section 362(h) should be broadly construed. *See In re McLaughlin*, 96 B.R. at 560; *see also In re Littke*, 105 B.R. at 911 (placing burden of uncertainty on creditor). Parties must not be allowed to escape sanction for stay violations on the strength of their ability to read ambiguities into the bankruptcy code.

However, the present case involved more than simple ambiguity. Here, there was case law from other jurisdictions that resolved the ambiguity in favor of the course that HHS adopted. Further, HHS's actions were not the usual kind associated with a stay violation. HHS did not take affirmative steps to recover a debt owed by UMC in the face of the stay; rather, it refused to pay money to UMC on its own separate debt arising after the stay. This does not excuse HHS for liability on the debt, or change the fact that the withholding of payment was an unlawful setoff. Yet, it does explain the confusion surrounding the application of the stay and thus counsels against a finding that the violation of the stay was "willful".

 The definition of "willful" adopted by the Third Circuit in *Atlantic Business* literally requires that the creditor have knowledge of the automatic stay before damages will be awarded under § 362(h). *See* 901 F.2d at 329. This cannot mean that a creditor is liable under § 362(h) only if the creditor knew that the filing of a bankruptcy petition resulted in an automatic stay. To require such knowledge would make specific intent an element of a § 362(h) violation, which *Atlantic Business* rejects. *See* 901 F.2d at 329; *see also Wagner* 74 B.R. at 904 (knowledge of bank-

ruptcy filing is equivalent to knowledge of stay). However, the knowledge requirement does appear to mean that the circumstances at the time of a violation must be such that the creditor can be charged with knowledge of the application of the stay. In my earlier decision, I determined that under the state of the law of withholding, HHS could not be charged with knowledge that its actions violated the stay. As this decision comports with all relevant Third Circuit holdings, I find no cause to disturb my earlier decision.

An order follows.

### ORDER

AND NOW, this 11th day of March, 1991, in consideration of the Motion of the Secretary to Alter or Amend the Judgment under Rule 59(e), and the response of the Creditor's Committee and Debtor thereto, and the Motion of the Creditor's Committee and Debtor to Alter or Amend the Judgment Under Rule 59(e) or Alternatively Rule 60(b), and the Secretary's response thereto, it is hereby ORDERED that both motions are DENIED.

---

because full knowledge of the law would not provide a guide.

5. I disagreed with the court only on this point. UMC does not challenge this decision in its current motion.